## AT NISI PRIUS, AT PHILADELPHIA, FEBRUARY SITTINGS, 1798.

CORAM—M'KEAN, CHIEF JUSTICE, SHIPPEN AND SMITH, JUSTICES.

RESPUBLICA *against* Gaoler of the city and county of Philadelphia.

Bail in a suit in another state may seize the principal here in order to surrender him. Aliter where actions have been brought bona fide against the party here, previous to such seizure.

ON a *habeas corpus ad subjiciendum* returnable immediately the defendant returned that he had and detained the body of Henry Banks in his custody, by virtue of two several writs of mesne process, &c.

On the hearing, the facts appeared as follow :

A suit was commenced in Virginia, in the District Court of the United States, by William M'Whan and David Campbell administrators of Patrick Carnes, against the said Henry Banks, on which David Ross became special bail in the sum of 28,000 dollars on the 20th April 1797.

Banks came into Pennsylvania, and on the 28th April 1797 was arrested on a *capias* out of the Court of Common Pleas of Philadelphia county at the suit of

The sheriff returned him in custody, but he was suffered to go at large.

The bail in Virginia deputed John F. Price to seize the principal in Philadelphia in order to surrender him in the District Court ; and the deputy took him accordingly on the bail piece on the 23d January 1798, but permitted him to remain at large until the 8th February following, when he was again arrested on another *capias* issued by Ebenezer Collet, in a plea of debt founded on a judgment obtained against him in Virginia.

The sheriff claimed Banks as being in his legal custody on the first *capias*; and Mr. Ingersoll in behalf of the bail moved, that he should be delivered over to the deputy.

He contended that justice should have its free course every where. Kame's Princ. Equ. It is moreover provided by the constitution of the United States, (Art. 4, § 1,) that full faith and credit shall be given in each state, to the judicial proceedings of every other state. Here Banks has delivered himself into the hands of Ross so early as the 20th April 1797, and bail

may seize the principal any where, or at any time, going to, or returning from any court of justice. Highmore on Bail, 71. This may be compared to the case of a prisoner escaping from the sheriff, who may be re-taken in any other county. 4 Bac. 435. Plowd. 37. Dalt. Sher. 23.

Mr. Du Ponceau *è contra* for the creditors. The power of the bail in the extent contended for, would produce the most mischievous consequences to society. The principal sheltered under the recognizance entered into by a freind, in a suit brought perhaps for the very purpose, may go into another state, contract debts, and when his person is arrested by his creditors, his former bail comes to his aid, protects him from imprisonment, and carries him home under his supposed custody. These would be serious evils; and nothing but unequivocal law, could justify such extravagant powers.

Ross should not have permitted Banks to leave Virginia; his deputy after seizing him here, should not have allowed him his liberty. The court alone in which bail has been taken, can give relief to the bail. 1 Wils. 248. The king's debtor charged with several exchequer informations for frauds in the customs, may be brought by *habeas corpus* and surrendered by the bail in a civil suit. 1 Stra. 641. The principal by intendment of law is in the custody of the bail; but when he is taken from them by due process, the bail are discharged. 8 Mod. 195.

Banks cannot be deemed a fugitive from justice. The act of congress of 12th February 1793, describes such fugitives, and directs the manner, in which they shall be apprehended and secured. 2 U. S. Laws, 155. Foreign nations should abstain from every act contrary to the rights of the sovereign of another country, and ought not to pursue and take a criminal by force in such other country. Vattel., lib. 2, c. 7, § 93, pa. 157.

By the court. The passage cited from Vattel, applies merely to nations entirely independent on each other. The question is not now before us, whether if bail be entered in a foreign jurisdiction, the manucaptor there, can come into this state and legally take the principal.

In the relation in which the several states composing the union, stand to each other, the bail in a suit entered in another state, have a right to seize and take the principal in a sister state, provided it does not interfere with the interests of other persons, who have arrested such principal. But where actions have been brought against the party previous to such seizure, the same right does not exist. Nevertheless, if they have originated by

collusion with the defendant and merely to protect him from being surrendered by his bail, the court on good grounds would interfere and prevent such improper practice. 1 Stra. 416. Here no such matter is alleged. And where a suit has been instituted for a considerable length of time, it would be wrong to defeat the plaintiff of a just demand, by delivering the defendant over to the bail, who has permitted him to come here and contract debts. It was great imprudence in the bail to suffer the party to leave Virginia. An indulgence of this nature may lead to great abuses. This case seems in some degree analogous to that of a sheriff. If a prisoner of his own wrong escape, the sheriff may take him again in another county upon fresh suit. But it is otherwise, where he voluntarily suffers the party to go at large out of his bailiwick. Plowd. 37. As to the suit of Ebenezar Collot on the judgment, the defendant cannot be held to bail. But as to the other action, though we pay every respect to the judicial proceedings of the district court of Virginia, the defendant must, under the circumstances of this case, be remanded.