### TAYLOR *v.* TAINTOR, TREASURER.

1. When the bail of a party arrested by order of a State court of one State on information for a crime, and released from custody under his own and his bail's recognizance that he will appear at a day fixed and abide the order and judgment of the court on process from which he has been arrested, have suffered him to go into another State, and while there he is, after the forfeiture of the recognizance, delivered up (under the second section of the fourth article of the Constitution and the act of February 12th, 1793, passed to give effect to it) on the requisition of the governor of a third State for a crime committed (without the knowledge of the bail) in *it*, and is tried, convicted, and imprisoned in such third State, the bail are not discharged from liability on their recogni-

---

\* 2 Howard, 341.          † 10 Peters, 449.          ‡ 28 Illinois, 93.

zance on suit by the State where the person was *first* arrested. There has been no such "act of the law" in the case as will discharge bail. The law which renders the performance impossible, and therefore excuses failure, must be a law operative in the State where the obligation was assumed, and obligatory in its effect upon her authorities.

2. The fact that there has been placed in the hands of the b. il, by some one, not the person arrested nor any one in his behalf, nor so far as the bail knew, with his knowledge, a sum of money equivalent to that for which the bail and himself were bound, has no effect, in a suit against the bail, on the rights of the parties.

IN error to the Supreme Court of Errors of the State of Connecticut; in which court William Taylor, Barnabas Allen, and one Edward McGuire were plaintiffs in error, and Taintor, Treasurer of the State of Connecticut, was defendant in error. The case arose under that clause of the Federal Constitution* which ordains that

"A person charged in any State with treason, felony, or other crime, who shall flee from justice and be found in another State, shall, on demand of the executive authority of the State from which he fled, be delivered up to be removed to the State having jurisdiction of the crime,"

and under the act of Congress passed February 12th, 1793, to carry into effect this provision, and which makes it the duty of the executive of the State or Territory to which a person charged with one of the crimes mentioned has fled, upon proper demand to cause the fugitive to be arrested and delivered up.

*Mr. M. W. Seymour, for the plaintiff in error ; Messrs. S. B. Beardsley and N. L. White, contra.*

Mr. Justice SWAYNE stated the facts of the case and delivered the opinion of the court.

This is a writ of error, issued under the 25th section of the Judiciary Act of 1789, to the Supreme Court of Errors of the State of Connecticut.

The attorney of the State for the county of Fairfield pre-

* Article 4, section 2.

sented to the Superior Court for that county, at the August term, 1866, an information charging Edward McGuire with the crime of grand larceny. A bench warrant, returnable to the same term, was thereupon issued. McGuire was arrested and held in custody. The court fixed the amount of bail to be given at $8000. On the 24th of September, 1866, McGuire and the other plaintiffs in error entered into a recognizance to the defendant in error in that sum, conditioned that McGuire should appear before the Superior Court, to be held at Danbury, in Fairfield County, on the third Tuesday of October, 1866, to answer to the information before mentioned, and abide the order and judgment of the court. McGuire was thereupon released from custody. He failed to appear according to the condition of the recognizance, and it was duly forfeited on the 16th of October, 1866.

This suit was thereupon instituted in the Superior Court of Fairfield County to recover the amount of the obligation. The facts developed at the trial, and relied upon by the defendants to defeat the action were, according to the practice in that State, found and certified by the court, and became a part of the record. So far as it is necessary to state them, they are as follows:

After the recognizance was entered into McGuire went into the State of New York, where he belonged. While there, upon a requisition from the governor of Maine upon the governor of New York, he was seized by the legal officers of New York, and was by them forthwith, on the 19th of October, 1866, delivered over to the proper officers of the State of Maine, by whom he was immediately and against his will removed to that State. The requisition charged a burglary alleged to have been committed by McGuire in Maine before the recognizance in question in this case was taken. At the time of the forfeiture of the recognizance McGuire was, and he has been ever since, legally imprisoned in Maine. In June, 1867, he was tried there for the burglary charged in the requisition, and convicted and sentenced to confinement in the penitentiary for fifteen years,

and was, at the time of the trial of this case in the court below, serving out his time under that sentence: Neither of the sureties knew, when they entered into the recognizance, that there was any charge of crime against McGuire other than the one alleged in the information in Connecticut. If the testimony were admissible, the plaintiff proved that the sum of $8000 was placed in the hands of the sureties to indemnify them against the liability they assumed, and if the testimony were admissible, the sureties proved that the money was not placed in their hands by McGuire, nor by any one in his behalf; and that, so far as the sureties knew, it was done without his knowledge.

The Superior Court gave judgment for the plaintiff. The defendants thereupon removed the case to the Supreme Court of Errors for Fairfield County. That court affirmed the judgment, and the defendants thereupon brought this writ of error.

The fact that the sureties were indemnified was proper to be considered by the Superior Court upon an application for time to produce the body of McGuire.* But it could have no effect upon the rights of the parties in this action, and may therefore be laid out of view.

It is the settled law of this class of cases that the bail will be exonerated where the performance of the condition is rendered impossible by the act of God, the act of the obligee, or the act of the law.† Where the principal dies before the day of performance, the case is within the first category. Where the court before which the principal is bound to appear is abolished without qualification, the case is within the second. If the principal is arrested in the State where the obligation is given and sent out of the State by the governor, upon the requisition of the governor

---

* Bank of Geneva _v._ Reynolds, 12 Abbott's Practice Reports, 81 ; Same _v._ Reynolds et al., 20 Howard's Practice Reports, 18.

† People _v._ Bartlett, 3 Hill, 571 ; Coke Littleton, 206, _a;_ Bacon's Abridgment, tit. "Conditions," (2) ; Viner's Abridgment, tit. "Condition," (Gc.) pl. 18, 19, and (I. c.) pl. 16 ; Hurlstone on Bonds, 48.

of another State, it is within the third.* In such cases the governor acts in his official character, and represents the sovereignty of the State in giving efficacy to the Constitution of the United States and the law of Congress. If he refuse, there is no means of compulsion.† But if he act, and the fugitive is surrendered, the State whence he is removed can no longer require his appearance before her tribunals, and all obligations which she has taken to secure that result thereupon at once, _ipso facto_, lose their binding effect. The authorities last referred to proceed upon this principle.

It is equally well settled that if the impossibility be created by the obligor or a stranger, the rights of the obligee will be in nowise affected.‡ And there is "a distinction between the act of the law proper and the act of the obligor, which exposes him to the control and action of the law."§ While the former exonerates, the latter gives no immunity. It is the willing act of the obligor which creates the obstacle, and the legal effect is the same as of any other act of his, which puts performance out of his power. This applies only where the accused has been convicted and sentenced. Before judgment—_non constat_—but that he may be innocent.

Where a State court and a court of the United States may each take jurisdiction, the tribunal which first gets it holds it to the exclusion of the other, until its duty is fully performed and the jurisdiction invoked is exhausted : and this rule applies alike in both civil and criminal cases.‖ It is indeed a principle of universal jurisprudence that where jurisdiction has attached to person or thing, it is—unless there is some provision to the contrary—exclusive in effect until it has wrought its function.

Where a demand is properly made by the governor of one

---

* State _v._ Allen, 2 Humphreys, 258; Devine _v._ State, 5 Sneed, 626; State _v._ Adams, 3 Head. 260.

† Kentucky _v._ Dennison, 24 Howard, 66.

‡ People _v._ Bartlett, 3 Hill, 570.

§ United States _v._ Van Fossen, 1 Dillon, 409.

‖ Hagan _v._ Lucas, 10 Peters, 400; Taylor _v._ Carryl, 20 Howard, 584; Troutman's case, 4 Zabriskie, 634; Ex parte Jenkins & Crosson, 2 American Law Register, 144.

State upon the governor of another, the duty to surrender is not absolute and unqualified. It depends upon the circumstances of the case. If the laws of the latter State have been put in force against the fugitive, and he is imprisoned there, the demands of those laws may first be satisfied. The duty of obedience then arises, and not before. In the case of Troutman, cited *supra*, the accused was imprisoned in a civil case. It was held that he ought not to be delivered up until the imprisonment had legally come to an end. It was said that the Constitution and law refer to fugitives at large, in relation to whom there is no conflict of jurisdiction.

The law which renders the performance impossible, and therefore excuses failure, must be a law operative in the State where the obligation was assumed, and obligatory in its effect upon her authorities. If, after the instrument is executed, the principal is imprisoned in another State for the violation of a criminal law of that State, it will not avail to protect him or his sureties. Such is now the settled rule.*

When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge; and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another State; may arrest him on the Sabbath; and, if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of new process. None is needed. It is likened to the rearrest by the sheriff of an escaping prisoner.† In 6 Modern‡ it is said : " The bail

---

* Withrow *v.* The Commonwealth, 1 Bush. (Kentucky), 17; United States *v.* Van Fossen, 1 Dillon, 406; Devine *v.* The State, 5 Sneed, 625; United States *v.* French, 1 Gallison, 1; Grant *v.* Fagan, 4 East, 190.

† 3 Blackstone's Commentaries, 290; Nicolls *v.* Ingersoll, 7 Johnson, 152; Ruggles *v.* Corry, 3 Connecticut, 84, 421; Respublica *v.* Gaoler, 2 Yeates, 263; 8 Pickering, 140; Boardman & Hunt *v.* Fowler, 1 Johnson's Cases, 413; Commonwealth *v.* Riddle, 1 Sergeant & Rawle, 311; Wheeler *v.* Wheeler, 7 Massachusetts, 169.

‡ Page 231, Case 339, Anon.

have their principal on a string, and may pull the string whenever they please, and render him in their discharge." The rights of the bail in civil and criminal cases are the same.* They may doubtless permit him to go beyond the limits of the State within which he is to answer, but it is unwise and imprudent to do so; and if any evil ensue, they must bear the burden of the consequences, and cannot cast them upon the obligee.†

In the case of *Devine* v. *The State*,‡ the court, speaking of the principal, say, "The sureties had the control of his person; they were bound at their peril to keep him within their jurisdiction, and to have his person ready to surrender when demanded. . . . In the case before us, the failure of the sureties to surrender their principal, was, in the view of the law, the result of their own negligence or connivance, in suffering their principal to go beyond the jurisdiction of the court and from under their control." The other authorities cited are to the same effect.

The plaintiffs in error were not entitled to be exonerated for several reasons:

When the recognizance was forfeited for the non-appearance of McGuire, the action of the governor of New York, pursuant to the requisition of the governor of Maine, had spent its force and had come to an end. McGuire was then held in custody under the law of Maine to answer to a criminal charge pending there against him. This, as already stated, cannot avail the plaintiffs in error. The shortness of the time that intervened between the arrest in New York and the imprisonment in Maine on the one hand, and the failure and forfeiture in Connecticut on the other, are entirely immaterial. Whether the time were longer or shorter— one year or one day—the legal principle involved is the same, and the legal result must be the same.

If McGuire had remained in Connecticut he would proba-

---

* Harp *v.* Osgood, 2 Hill, 218.

† Devine *v.* The State, 5 Sneed, 625; United States *v.* Von Fossen, 1 Dillon, 410; Respublica *v.* Gaoler, 2 Yeates, 265, cited *supra*.

‡ 5 Sneed, 625.

bly not have been delivered over to the authorities of Maine, and would not, therefore, have been disabled to fulfil the condition of his obligation. If the demand had been made upon the governor of Connecticut, he might properly have declined to comply until the criminal justice of his own State had been satisfied. This right, it is not to be doubted, he would have exercised. Had he failed to do so, the obligation of the recognizance would have been released. The plaintiffs in error are in fault for the departure from Connecticut, and they must take the consequences. But their fault reached further. Having permitted their principal to go to New York, it was their duty to be aware of his arrest when it occurred, and to interpose their claim to his custody.*

We have shown that when McGuire was arrested in New York the original imprisonment, under the information in Connecticut, was continued; that the bail had a right to seize him wherever they could find him; that the prosecution in Connecticut was still pending, and that the Superior Court having acquired jurisdiction, it could neither be arrested nor suspended *in invitum* by any other tribunal. Though beyond the jurisdiction of Connecticut, he was still through his bail in the hands of the law of that State, and held to answer there for the offence with which he was charged. Had the facts been made known to the executive of New York by the sureties at the proper time, it is to be presumed he would have ordered McGuire to be delivered to them and not to the authorities of Maine. The result is due, not to the Constitution and law of the United States, but to their own supineness and neglect. Under the circumstances they can have no standing in court to maintain this objection.

The act of the governor of New York, in making the surrender, was not "the act of the law" within the legal meaning of those terms; but in the view of the law was the act of McGuire himself. He violated the law of Maine, and thus put in motion the machinery provided to bring

---

* Alguire v. The Commonwealth, 3 Ben. Monroe, 349, 351.

him within the reach of the punishment denounced for his
offence. But for this that machinery, so far as he was con-
cerned, would have remained dormant. To hold that the
surrender was the act of the law, in the sense contended for, ·
would be as illogical as to insist that the blow of an instru-
ment used in the commission of a crime of violence, is the
act of the instrument and not of the criminal. It is true
that in one case there would be a will and purpose as to the
result in question, which would be wanting in the other, but
there would be in both, the relation of cause and effect, and
that is sufficient for the purposes of the analogy. The prin-
cipal in the case before us, cannot be allowed to avail him-
self of an impossibility of performance thus created; and
what will not avail him cannot avail his sureties. His con-
tract is identical with theirs. They undertook for him what
he undertook for himself.

·. The act of the governor of New York was the act of a
stranger.

It is true that the constitutional provision and the law of
Congress, under which the arrest and delivery were made,
are obligatory upon every State and a part of the law of
every State. But the duty enjoined is several and not joint;
and every governor acts separately and independently for
himself. There can be no joint demand and no joint neg-
lect or refusal. In the event of refusal, the State making
the demand must submit. There is no alternative. In the
case of McGuire no impediment appeared to the governor
of New York, and he properly yielded obedience. The
governor of Connecticut, if applied to, might have right-
fully postponed compliance. If advised in season he might
have intervened and by a requisition have asserted the claim
of Connecticut. It would then have been for the governor
of New York to decide between the conflicting demands.
Whatever the decision—if the proceedings were regular—
it would have been conclusive. There could have been no
review and no inquiry going behind it.* We cannot hold

* The matter of Clark, 9 Wendell, 221; Ex parte Jenkins & Crosson,
*supra*, p. 370, note ‖.

that Connecticut was in any sense a party or consenting to what was done in New York. It follows that if McGuire had been held in custody in New York, at the time fixed for his appearance in Connecticut, it would not in anywise have affected the obligation of the recognizance.

A different doctrine would be fraught with mischief. It could hardly fail, by fraud and connivance, to lead frequently to abuses, involving the escape of offenders of a high grade, with pecuniary immunity to themselves and their sureties. Every violation of the criminal laws of a State is within the meaning of the Constitution, and may be made the foundation of a requisition.* Hence the facility of escape if this instrumentality could be used to effect that object. The rule we have announced guards against such results.

The supposed analogy between a surrender under a treaty providing for extradition and the surrender here in question has been earnestly pressed upon our attention. There, the act is done by the authorities of the nation—in behalf of the nation—pursuant to a National obligation. That obligation rests alike upon the people of all the States. A National exigency might require prompt affirmative action. In making the order of surrender, all the States, through their constituted agent, the General Government, are represented and concur, and it may well be said to be the act of each and all of them. Not so here.

The judgment of the Supreme Court of Errors of Connecticut is

AFFIRMED.

Mr. Justice DAVIS and Mr. Justice HUNT did not sit.

Mr. Justice FIELD (with whom concurred Mr. Justice CLIFFORD and Mr. Justice MILLER), dissenting.

I am unable to concur in the judgment rendered by the majority of the court in this case. I agree with them that sure-

---

* Kentucky v. Dennison, 24 Howard, 66; Certain Fugitives, 24 Law Magazine, 226.

ties on a recognizance can only be discharged from liability by the performance of the condition stipulated, unless that become impossible by the act of God, or of the law, or of the obligee. But I differ from them in the application of their term *act of the law.* If I understand correctly their opinion they limit the term to a proceeding authorized by a law enacted by the State where the recognizance was executed. I am of opinion that the term will also embrace a proceeding authorized by any law of the United States. A proceeding sanctioned by such law, which renders the performance of the condition of the recognizance impossible, ought, in my judgment, upon plain principles of justice and according to the authorities, to release the sureties.

The Constitution of the United States declares its own supremacy, and that of the laws made in pursuance of it, and of treaties contracted under the authority of the United States. As the supreme law of the land they are, of course, to be enforced and obeyed, however much they may interfere with the law or constitution of any State.

Now the Constitution provides that "a person charged in any State with treason, felony, or other crime, who shall flee from justice and be found in another State, shall, on demand of the executive authority of the State from which he fled, be delivered up to be removed to the State having jurisdiction of the crime."* The act of Congress of February 12th, 1793, was passed to carry into effect this provision, and has made it the duty of the executive of the State or Territory to which a person charged with one of the crimes mentioned has fled, upon proper demand to cause the fugitive to be arrested and delivered up. In pursuance of this act the principal on the recognizance in suit was arrested by order of the governor of New York, and delivered up as a fugitive from justice to the officers of the State of Maine. By them he was taken to that State, and having been previously indicted for a felony, was there tried, convicted, and sentenced to the penitentiary for fifteen years. Thus in the

---

* Article 4, section 2.

execution of a valid law of the United States, passed to carry out an express constitutional provision, the prisoner was taken against his will from the custody of his bail, and placed in the custody of officers of another State, from whom the bail could not recover him to make a surrender pursuant to the condition of their recognizance. It is no answer to say that the prisoner, when called in Connecticut, was detained by the State of Maine, and not by any proceeding or order under an act of Congress, because that proceeding or order had been executed, and was no longer operative. He was taken out of the custody and placed beyond the reach of his bail by a proceeding under the act, and therefore to such proceeding their inability to surrender him must be attributed.

The case is not essentially different from a surrender of a fugitive from justice under an extradition treaty. The United States have such treaties with several European nations, and whatever may have been the extravagant doctrines respecting the rights of the States, at one time in some parts of the country, it will not now be pretended that with the enforcement of such treaties any State, by her laws or judicial proceedings, can interfere. If the fugitive, after his arrival in this country, should commit a crime and be held to bail, it would be a question with the authorities of the General Government whether he should be surrendered under the treaty; but if surrendered it would be manifestly unjust to the bail to hold them to the performance of the conditions of the recognizance.

It seems to me that it would be a more just rule to hold, that whenever sureties on a recognizance are rendered unable to surrender their principal, because he has been taken from their custody without their assent, in the regular execution of a law or treaty of the United States, their inability thus created should constitute for their default a good and sufficient excuse. The execution of the laws and treaties of the United States should never be allowed in the courts of the United States to work oppression to any one.