THE PEOPLE, for use of E. S. Masterson,

*v.*

CARRIE B. HATHAWAY.

*Opinion filed December 16, 1903.*

1. RES JUDICATA—*denial of exoneretur not res judicata as to bonds-man's liability.* An unreversed order of court denying an *exoneretur* upon petition filed by a bondsman under section 24 of the act relating to bail in civil cases is not *res judicata,* upon the question of the bondsman's liability in a subsequent suit on the bond, as to matters not proper to be urged in the application for *exoneretur.*

2. BAIL—*when obligation of bond is fulfilled.* An order of court discharging from arrest under a *capias ad satisfaciendum* an insolvent debtor who had given bail pending the hearing of his petition for discharge under the Insolvent Debtor's act releases his bondsman from liability, notwithstanding such order is reversed on appeal.

3. SAME—*right of bail to arrest principal is essential to their relationship.* The right of the surety on a bail bond to the custody of the principal is essential to their relationship, which ceases when the right of bail to arrest principal is taken away by order of court.

*People, for use, etc.* v. *Hathaway,* 102 Ill. App. 628, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. CHARLES G. NEELY, Judge, presiding.

This is an appeal from a judgment entered by the Appellate Court for the First District affirming a judgment rendered by the circuit court of Cook county in an action against appellee on a bond.

The facts, stated in the main as they were by the Appellate Court, are as follows: William C. Furman was arrested on a *capias ad satisfaciendum* upon a judgment obtained against him in the circuit court of Cook county by E. S. Masterson, for $400 and costs. Furman sought to be discharged by petition filed in the county court under the Insolvency act, offering to schedule all of his assets, claiming that malice was not the gist of the action. Pending a hearing of his petition the county court admitted him to bail, and on the 5th of July, 1899, the

appellee, Carrie B. Hathaway, became his surety, and he was released from custody pending a hearing of his petition. The condition of the bond of appellee is, that Furman shall appear before the county court on the 6th day of July, 1899, at ten o'clock in the forenoon, and from day to day thereafter, until said matter shall be finally disposed of by said court, and shall make an assignment and surrender his assets, if required, and if not required to make assignment, shall surrender himself to the officer into whose custody he may be ordered by the court and abide the order of the court. The hearing of the petition was continued from day to day until the 26th of July, 1899, when the county court found that malice was not the gist of the action wherein the *capias* issued, and ordered that Furman be discharged from arrest and custody. Thereupon, and by the same order, Masterson, the creditor, appealed from that order. An appeal was allowed on his filing, on or before September 12, 1899, a bill of exceptions and bond in the penal sum of $250, with sureties thereon, to be approved by the court. On the 11th day of September, 1899, on the motion of Masterson, it was ordered that the time for him to file a bond and bill of exceptions be extended ten days. On the 20th of September, 1899, the appeal bond of Masterson was approved and filed. The Appellate Court, upon hearing of the appeal, found that malice was the gist of the action and reversed the order of the county court, and on the 19th of June, 1900, the cause was re-docketed in the county court, and upon due notice to Furman an order was entered that the body of William C. Furman be remanded to the custody of the sheriff of Cook county in accordance with the writ of *capias ad satisfaciendum*, which writ was set out in the order, and it was further ordered that Furman surrender himself into the custody of the sheriff of Cook county, Illinois, instanter. On the 27th day of June, 1900, appellee filed in said cause her petition, setting forth substantially the foregoing. The petition fur-

ther states that Furman was on the 19th day of July, 1899, discharged in bankruptcy, and prays that *exoneretur* be entered, in accordance with paragraph 24, chapter 16, of the Revised Statutes of Illinois, and prays that such *exoneretur* may be entered upon the records of the court, that an order may be entered discharging her from liability under her bond, and for such other relief as to the court may seem meet and proper. An answer was filed and a hearing had on said petition, and on the 27th day of June, 1900, the prayer of appellee's petition was denied, which judgment was, on writ of error to the Appellate Court, by the Appellate Court affirmed. Demand having been made of Carrie B. Hathaway to surrender the body of William C. Furman or pay the amount of the judgment against him, and she having refused to do either, suit was brought upon the bond given in the county court on July 5, 1899.

Appellant contends that Carrie B. Hathaway applied to the county court to discharge her from the bond she had given; that the county court decided the matter against her; that that order has never been reversed, and therefore the question of her right to discharge and her liability under the bond is now *res judicata*, and she cannot have a second hearing on the same matter in this court. Appellant also contends that the condition of the bond has not been performed, and that Carrie B. Hathaway is liable, irrespective of the question of former adjudication. Appellee contends that the question of her liability on the bail bond sued on is not, by reason of the denial of her petition praying that an *exoneretur* be entered thereon in the county court, *res judicata;* and also that by the appearance of Furman in court on July 26, 1899, the condition of the bond was performed.

The case was tried before a judge, without a jury, upon a stipulation of facts. The trial court found the issues for and rendered judgment in behalf of appellee, defendant below.

MASTERSON, HAFT & DANDRIDGE, for appellant:

Mere attendance in court by the principal to defend the suit is not sufficient to discharge the bail. There must be a formal surrender of the principal into custody of the court and an *exoneretur* entered upon the record in discharge of the bail. *Simmons* v. *Adams*, 15 Vt. 677; *Blood* v. *Morrill*, 17 id. 598; *Humphrey* v. *Casson*, 26 id. 760.

The surety on a bail bond cannot plead that the bond has been exonerated unless there has been an *exoneretur* entered of record. *Darling* v. *Cutting*, 57 Vt. 218.

It is the duty of the bail to surrender the principal whether the order of the court is favorable or unfavorable, and then, when the principal makes an application for discharge, the court will determine whether or not there is ground for holding him in custody. *Wheeler* v. *People*, 39 Ill. 430.

The bail is liable on the bond if a change of venue is taken and the principal fails to appear. An order granting an appeal is, in effect, granting a change of venue to a higher court. *Harrison* v. *Trader*, 29 Ark. 85; *Williams* v. *McDaniels*, 77 Ga. 4.

Where a judgment has been reversed the rights of the parties stand as if it had never been rendered. *Gaslight Co.* v. *Zanesville*, 47 Ohio St. 35.

The reversal of a judgment destroyed it. The judgment entered after such reversal finally determines the rights of the parties. *Bucher* v. *Railroad Co.* 125 U. S. 555.

Wherever a reversal occurs in the Appellate Court the judgment of the court below is entirely abrogated, and the cause stands as if no trial had occurred. *Goodman* v. *Turner*, 94 Ill. App. 530; *Schuman* v. *Helberg*, 62 id. 218; *Brockway* v. *Jewell*, 10 Barb. 590; *Clayton* v. *Bredle*, 1 id. 11; *Johnson* v. *Yaemons*, 8 How. Pr. 140; *McDonald* v. *Savings*, 2 id. 35; *Macklin* v. *Allenberg*, 100 Mo. 137.

The surety is bound by the judgment obtained against the principal. *Lewis* v. *Breckenridge*, 1 Blackf. 112; *Foster* v. *Wood*, 6 Johns. Ch. 87; *Jackson* v. *Guilmartin*, 61 Ga. 544.

HERBERT J. DAVIS, and PERCY B. DAVIS, for appellee:

The question of the liability of the appellee on the bail bond sued upon is not, by reason of the denial of her petition praying that an *exoneretur* be entered thereon in the county court, *res judicata.* Stat. 4 and 5 Anne, chap. 20; *Wilmore* v. *Clerk,* 1 Ld. Raym. 156; *Anonymous,* 1 Salk. 101; *Shettle* v. *Wood,* 6 Mod. 132; *Bird* v. *Mabbett,* 1 Johns. Cas. 31; *Smith* v. *Lewis,* 2 Chit. 100; *Mills* v. *Hildreth,* 81 N. Y. 91; *Washburn* v. *Phelps,* 24 Vt. 506; *Bruner* v. *Ingraham,* 1 Scam. 556; *Adams* v. *Bartlett,* 5 Gilm. 170; *Walker* v. *Welch,* 14 Ill. 363; *Richardson* v. *Shean,* 46 Ill. App. 528; 147 Ill. 366.

By the appearance of the principal in court on July 26, 1899, the condition of the bond was performed. *Baker Manf. Co.* v. *Fisher,* 35 Kan. 659; *Whipple* v. *People,* 41 Ill. App. 301; *Duncan* v. *Tindall,* 20 Ohio St. 567; *Lockwood* v. *Jones,* 7 Conn. 432; *Ingersoll* v. *Strong,* 9 Metc. 447; *Callamore* v. *Fernald,* 3 Gray, 318.

Mr. JUSTICE RICKS delivered the opinion of the court:

The propositions argued by appellant in support of this appeal are: (1) That the question of the right to a discharge, as bail, by appellee, is *res judicata,* and can not here be insisted upon by appellee as a defense to the present action; (2) that the condition of the bond has not been performed.

As to the first proposition the contention of appellant is, that the petition filed by appellee in the county court, by means of which application was made for appellee's discharge as bail, presented to that court the same matters that are now relied on as a defense, and appellee having been unsuccessful in that petition and an *exoneretur* having been denied, the questions there raised and decided adversely to appellee became *res judicata.* In that proceeding the petition specifically prayed that an *exoneretur* be entered under section 24 of chapter 16 of the Revised Statutes, which is as follows: "When any

defendant in any civil action shall have been discharged as an insolvent debtor, agreeably to the laws of this State respecting insolvent debtors, or under any bankrupt law of the United States, and a certificate from the authority lawfully granting the same shall be produced to the court, the bail of such defendant shall, in all cases, be entitled to have an *exoneretur* entered upon the records of the court, which shall, thereupon, operate as a discharge from the bond in the same manner as if he had surrendered his principal in court, or to the sheriff, as hereinbefore directed: *Provided,* that judgment shall not have been recovered against him as the bail of such defendant."

As we regard it, the only question presented to the court on the application of appellee just mentioned, was whether appellee, according to the provisions of said section, was entitled to an *exoneretur*, and, though it was there adjudged that appellee was not entitled to such discharge, she is not now precluded, in another and different action, from setting up matters of defense improper to be urged on the application addressed to the county court. The decision of the court in that proceeding was limited to the finding that on the showing there made, and under the provisions of said section, an *exoneretur* must, in the opinion of the court, be denied. As a defense to the present suit on appellee's bond other matters may legitimately be urged that would not be proper in support of a petition for an *exoneretur* under the section above referred to.

We are inclined to the view contended for by appellee that the only thing which became *res judicata* by reason of the refusal of the county court to enter an *exoneretur* on the bail bond, as prayed, was the question of the right of appellee to urge the discharge in bankruptcy of the principal in defense to an action on the bond, and the closing prayer of the petitioner in that application, "that an order may be entered discharging her from liability

under said bond and for such other relief as to the court may seem meet and proper," was simply a formality of pleading, and surplusage, and called for an exercise of power not conferred upon the court by said section. The right to an *exoneretur* under said section is confined to the bail of "any defendant in any civil action [who] shall have been discharged as an insolvent debtor, agreeably to the laws of this State respecting insolvent debtors, or under any bankrupt law of the United States, and [when] a certificate from the authority lawfully granting the same shall be produced to the court." The order of discharge of William C. Furman discharged him "from all debts and claims which are made provable by said acts against his estate," etc. This order was made a part of appellee's petition to the county court, and it was by virtue of it and the provisions of section 24, *supra,* that the petitioner claimed to be entitled to the relief prayed. On the hearing of that petition the *exoneretur* was denied, and on writ of error to the Appellate Court the judgment of the county court was affirmed. The opinion of the Appellate Court (102 Ill. App. 626,) on said writ of error recites: "The petition of plaintiff in error sets forth that William C. Furman had been discharged from all debts and claims, * * * except such debts as are by law excepted from the operation of a discharge in bankruptcy. * * * It does not appear that the judgment against him in favor of Masterson is one of the debts from which Furman was discharged." The court further held that there was no occasion for the granting of the *exoneretur* under said petition, for the reason that petitioner (appellee) had a good defense to a suit against her as bail, which suit was at that time pending. Thus it will be seen that in the proceeding for an *exoneretur* the court did not assume to pass upon, as we think it had no right to do, matters that in this proceeding are now urged as a defense, hence the position as to *res judicata* taken by appellant in this action cannot be sustained.

The only other point that it is necessary for us to consider in this case is whether appellee fulfilled the obligation of her bond, or, in other words, was she for any cause relieved of that undertaking.

As set forth in the statement preceding, on the trial in the county court on the petition of appellee's principal, William C. Furman, for discharge from arrest, that court entered an order July 5, 1899, that the petitioner be released on bond, and the cause having been continued from time to time, was finally disposed of, so far as the bail was concerned, on July 26, 1899, on which day said court entered an order which was, in substance, that petitioner's prayer be granted and that he (William C. Furman) be discharged from arrest on the ground that malice was not the gist of the action in the judgment on which petitioner was arrested, and that he had made a fair and complete schedule of his personal estate, etc. The effect of this order, in our view, was to release appellee from obligation, as bail, to thereafter have her principal, William C. Furman, before said court and surrender him to the custody of its officers. The obligation of the bail in this class of cases is to produce the principal before the court upon demand, and at any and all times surrender him up in accordance with its mandates. But this obligation is one of which the bail may be relieved at any time by a voluntary surrender of the principal. In contemplation of law the principal is in the custody of his bail, who may take him where he pleases, and detain him or surrender him in court into the custody of the sheriff who has process against him, or, if the bail concludes his principal meditates flight, or for any reason desires no longer to be held responsible for the appearance of the principal, he may cause him to be imprisoned in the common gaol of the county and thus exonerate himself from his obligation. *Parker* v. *Bidwell*, 3 Conn. 84; *Ruggles* v. *Corey*, id. 419.

In *Lockwood* v. *Jones*, 7 Conn. 432, in speaking of the obligation assumed by and the rights of one who becomes

special bail for the surrender of a principal, the court said: "The technical final judgment before the termination of the suit ought not, in any respect, to impair the right of the bondsman for prosecution, but by this event the right of the bail over the principal is destroyed. He has stipulated to surrender him, but the law steps in and makes the surrender of the principal, by the bail, impossible. After this, the law is not so unjust as to require of the bail to perform an impossibility of its own creation, but it effectually protects him by its established principle that 'in all cases where a condition of a bond, recognizance, etc., is possible at the time of the making of the condition, and before the same can be performed the condition becomes impossible by the act of God or of the law, etc., there the obligation is saved.'"

When the county court rendered its judgment discharging Furman from arrest he was not then subject to arrest by his bail. When the bail bond in this case was signed, Furman became the prisoner of appellee. She was entitled to keep him in custody, or she had a right to terminate her liability at any time by surrendering him to the sheriff. By the order of the county court discharging Furman from arrest, appellee's right to his custody, as her security, was taken away. She could not touch him without becoming a trespasser. When the right of the bail to arrest the principal ceases, the relationship of bail and principal also ceases, for the right to custody, and necessarily of arrest, is an inseparable incident to that relationship. In the stipulation of facts on which this case was submitted to the court it is agreed that on the day of the entry of the order of the county court discharging Furman from arrest he was present in court and subject to its mandates. The obligation of appellee's bond was then performed, and the law, which by that order deprived appellee of her security as bail for William C. Furman, cannot afterwards subject her to a penalty for not doing something which it had made im-

possible or illegal for her to do. This doctrine is well laid down and amplified in the case of *Steelman* v. *Mattix*, 9 Vroom, 247, and the citations therein alluded to, wherein the court says: "The cases almost uniformly recognize the rule, that where the condition of a bond or recognizance becomes impossible of performance by the act of God, or of the law, or of the obligee, the obligation is saved. (*People* v. *Manning*, 8 Cow. 297; *Taylor* v. *Taintor*, 16 Wall. 366; *Hillyard* v. *Mutual Ben. Ins. Co.* 6 Vroom, 415.) The rule is thus stated in Tidd's Practice, 293: 'Whenever, by act of the law, a total impossibility or temporary impracticability to render a defendant has been occasioned, the court will relieve the bail from the unforeseen consequence of having become bound for a party whose condition has been so changed by operation of law as to put it out of their power to perform the alternative of their obligation without any default, *laches* or possible collusion on their part.'"

Very pertinent, in this connection, is the case of *Whipple* v. *People*, 40 Ill. App. 301. There a debtor was arrested, as here, and petitioned the county court for his discharge and gave a bond. The hearing, as here, was continued from time to time, and finally, on November 22, 1889, it was ordered that the petitioner be discharged. On December 5, 1889, which was still in the November term, the court ordered the case re-instated on the trial calendar. On January 10, 1890, which was in the December term, the default of the debtor was entered and the petition was dismissed, and the debtor was ordered to the custody of the sheriff. Some question being made as to the effect of the order of December 5 and that of November 22, it was deemed by the court as immaterial, and it was held: "The substantial ground, however, for reversing this judgment [that is, a judgment in an action on the bond,] is, that the condition of the bond had been once performed. The principal had appeared and by the order of the court been discharged." And as to the rights

of the bail in such cases the court said: "Now, these common law rights, necessary to the appellant for his own security, were taken from him by the action of the court. Whatever may be the effect of the order of December 5, 1889, there was the period between that and the previous order, during which, if the appellant had touched Cooper against his will, the appellant would have been a trespasser, liable to an action as such,"—citing *Baker Manf. Co.* v. *Fisher*, 35 Kan. 659; *Duncan* v. *Tyndall*, 20 Ohio St. 567.

In *Baker Manf. Co.* v. *Fisher, supra,* one Knotts, being sued and arrested, executed a bail bond, signed by one Fisher and others as sureties, and was released. The order of arrest was, for certain defects, vacated. The plaintiff, being refused permission to cure the defect by amendment, sued out a writ of error to the Supreme Court, where the ruling of the lower court was reversed. Subsequently, in the lower court, the plaintiff recovered judgment, and the defendants in the original action not being found, suit was brought on the bail bond. The court, in that case, in reference to the order of discharge, spoke as follows: "No stay of the ruling of the district court was obtained by the plaintiff, and from March 22, 1882, until September 6, 1883, the bail had no legal right to arrest or surrender the defendant. The sheriff had no right to hold him even for an instant, and had no right to accept his surrender from the bail. Therefore the right to arrest and surrender their principal, given by the statute to the bail as their security, was by the statute taken away when the defendant Knotts was discharged on March 22, 1882. The sureties executed the undertaking signed by them upon the faith of the provisions of the law that permitted them at any time to arrest and surrender the defendant. The discharge of the defendant on March 22, 1882, exonerated the bail. At that time the defendant Knotts was entitled to his immediate discharge, and neither the bail nor the sheriff had any custody or control of him."

In *Duncan* v. *Tyndall, supra,* it is said: "And if the right to arrest and surrender their principal was given by the law to the bail as their security, and afterward is taken away by the act of the law, they should not be bound by an undertaking which was entered into upon the faith of that security."

What has been said we think sufficient to make clear our views upon the point under consideration, and entertaining the views we do, we think appellant is in error in his insistence that the obligation of appellee, as bail, was not performed, and must hold that appellee was discharged from her undertaking, as bail, by the order of the county court discharging the principal from arrest.

Some other points are advanced by counsel in their argument, but after what has already been said it is unnecessary to prolong this opinion in the consideration of such matters.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*