STATE OF NORTH CAROLINA v. JAMES HORNE, AKA JIM HORNE

No. 8313SC1060

(Filed 15 May 1984)

**Arrest and Bail § 11.4— refusal to remit forfeited bail bond**

The trial court did not abuse its discretion in refusing to remit a portion of a forfeited $100,000 bail bond to the sureties on the bond where the evidence showed that when the defendant failed to appear for trial, he was

awaiting sentencing in Florida but was not incarcerated in that state, and that the sureties knew of the date set for defendant's trial, where defendant was and the identity of his Florida attorney but made no attempt to obtain defendant's presence for his trial in North Carolina. G.S. 15A-544(e).

APPEAL by defendant-sureties from *Hobgood (Robert H.)*, *Judge.* Order entered 23 May 1983 in Superior Court, BRUNSWICK County. Heard in the Court of Appeals 30 April 1984.

*Attorney General Rufus L. Edmisten by Assistant Attorney General David Roy Blackwell for the State.*

*Ward and Smith by David S. Morris and William Joseph Austin, Jr.; Of Counsel Frink, Foy and Gainey by Henry G. Foy for surety-appellants.*

*Prevatte, Prevatte & Peterson by James R. Prevatte, Jr. and R. Glen Peterson for appellee, Brunswick County Board of Education.*

BRASWELL, Judge.

The defendant "skipped" his bail bond. The State wants the money for the benefit of the county school fund. The court entered a judgment of forfeiture on 14 February 1983. On 4 May 1983 the sureties, James D. Couey and wife, Martha B. Couey, moved to remit the judgment. The court denied the motion for remission on 23 May 1983. The sureties appeal.

The defendant failed to appear for his court date of 4 October 1982. A surety appearance bond for $100,000 for the offenses of conspiracy to traffic and trafficking in marijuana had been executed earlier by the Coueys and secured by a deed of trust on certain lands.

The grounds for relief alleged in the motion to remit are: (1) the sureties' attorney was on vacation when the judgment of forfeiture was entered on 14 February 1983, and the attorney "never received notice that a judgment would be prayed for and entered on February 14, 1983," [there is no record evidence to support this ground and was abandoned by the surety-appellants on appeal] and (2) because "it was impossible for the Defendant to be in the Brunswick County Superior Court on October 4, 1982," they "have a meritorious defense."

No exceptions were taken to any of the trial judge's fourteen findings of fact. In summary, those binding facts show that the defendant was *not incarcerated* in the State of Florida on 4 October 1982, although he had entered pleas of guilty and was *awaiting* sentencing. His Florida attorney had instructed him not to leave until he was sentenced. The guilty pleas were entered on 20 September 1982, but Horne was not sentenced, or taken into custody in Florida, until 2 November 1982. James Couey was aware of the Brunswick County court date of 4 October 1982 before 4 October. The defendant had telephoned Attorney William D. Ezzell on or about 26 or 27 October 1982, stating that "he was not coming back to the State of North Carolina."

James Couey did not go to Florida, nor did he arrange to send anyone to Florida to obtain the defendant's presence for court even though Couey knew of the court date, knew where the defendant was, and knew the identity of his Florida attorney. Although Couey is not in the business of making bonds, he had made two prior bonds and fully understood he was putting up property as security for the bond. Couey also had actual knowledge and notice of his responsibilities as bail bondsman.

As to surety Martha B. Couey, the court found and concluded that she was served with the notice of order of forfeiture, that there was no evidence that she did not understand the nature and consequences of executing a legal document, that there is a presumption that she fully understood the nature and consequences of signing together, with her husband, and that the forfeiture was properly entered on 14 February 1983. No exceptions were taken to these findings and conclusions.

The surety-appellants make two exceptions. The first challenges the conclusion of law, "[t]hat there exists no meritorious defense for the remission of any of this judgment," and the second exception challenges the adjudicatory part of the order that holds "remission is denied." The questions presented for review allege that the trial judge applied "the wrong legal standard to determine whether the judgment of forfeiture should be remitted," and that the judge abused his discretion by refusing to remit any part of the bail bond. We disagree and affirm.

The statutory law governing remission of forfeited bail bonds is contained in G.S. 15A-544(e) and (h). Subsection (e) provides that

"the court may direct that the judgment be remitted in whole or in part, upon such conditions as the court may impose, if it appears that justice requires the remission of part or all of the judgment." Subsection (h) provides that "[f]or extraordinary cause shown, the court . . . may, after execution, remit the judgment in whole or in part and order the clerk to refund such amounts as the court considers appropriate." As there has been no execution on the judgment before us, subsection (h) is inapplicable, and we apply subsection (e) alone.

Since the statute says "may" remit, the decision to do so or not is a discretionary one. We review only for an abuse of discretion. In order to exercise judicial discretion in a manner favorable to a surety, the judge must determine in his discretion that justice requires remission. Here, the trial judge exercised his responsibility by conducting the hearing, finding the facts, and making the conclusions of law. The facts as found do not compel the conclusion that "justice requires" the forfeiture be remitted in whole or in part. The conclusions fail to show any abuse of discretion in the discretion applied by the trial judge to the uncontested facts.

The theory of the hearing below, based upon the sureties' own written motion and the statute, is that justice requires that the trial court recognize their meritorious defense of excusable absence because of the defendant's inability to attend court. However, the facts conclusively show that the defendant was not incarcerated, and there was no evidence of personal sickness or death. On the contrary, the showing is that justice required the defendant's presence, rather than his absence. Even though the sureties are lay persons, and not professionals in the bonding business, they knowingly executed a defendant's bail bond and had the responsibility to produce the defendant for all his required court appearances.

It is immaterial in this case that the judge's order did not include a use of the statutory words "justice requires." With the impossibility of attendance allegation unsubstantiated, and with the record devoid of facts showing justice required relief, as a matter of law it would have been an abuse of discretion to have remitted in whole or in part the judgment of forfeiture. Let execution upon the judgment issue by the Clerk of Superior Court upon certification of this opinion to the trial court.

As said in *Taylor v. Taintor*, 83 U.S. 366, 371-72, 21 L.Ed. 287, 290 (1873): " 'The bail have their principal on a string, and may pull the string whenever they please, and render him in their discharge. (Citation omitted.)' "

Affirmed.

Chief Judge VAUGHN and Judge EAGLES concur.