*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0368P (6th Cir.)
File Name: 00a0368p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

LARRY R. LUND; DEBORAH
LUND,
     *Plaintiffs-Appellants/*
        *Cross-Appellees,*
MARK L. LOOP,
        *Plaintiff,*

    *v.*

SENECA COUNTY SHERIFF'S
DEPARTMENT; SENECA
COUNTY PROSECUTOR'S
OFFICE,
    *Defendants-Appellees*
        *(99-3815),*
PAUL F. KUTSCHER, JR.;
RICHARD F. DOHNER; D. L.
GADBERRY,
    *Defendants-Appellees/*
        *Cross-Appellants,*

CLYDE POLICE DEPARTMENT,
et al.,
        *Defendants.*

Nos. 99-3815/3816

1

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 97-07087—David A. Katz, District Judge.

Argued:  June 22, 2000

Decided and Filed:  October 12, 2000

Before:  KEITH, MERRITT, and COLE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:**   Dennis M. Coyne, Cleveland, Ohio, for
Appellants. Timothy S. Rankin, ISAAC, BRANT, LEDMAN
& TEETOR, Columbus, Ohio, for Appellees.  **ON BRIEF:**
Dennis M. Coyne, Cleveland, Ohio, for Appellants.  Timothy
S. Rankin, ISAAC, BRANT, LEDMAN & TEETOR,
Columbus, Ohio, for Appellees.

_____

**OPINION**
_____

  MERRITT, Circuit Judge.  The plaintiffs, Larry and wife
Deborah Lund, two licensed bail bond underwriters from
Florida, sued the Ohio law enforcement officers listed in the
caption above, claiming constitutional violations under 42
U.S.C. § 1983 and numerous common law torts under Ohio
law.  The action arises from the arrest and prosecution of
plaintiff Larry Lund by defendants for his behavior while
arresting Michael Gish, an alleged fugitive bail jumper from
Florida for whom the Lunds had written a bail bond.  Lund
entered the home of a third party in Ohio where Gish was
alone with two small children.  He did so without a warrant.
According to the law enforcement officer defendants from
Seneca County, Ohio, he arrested and removed Gish without
making provision for the care and safety of the two children

established right" under the Extradition Clause and hence does not shield a bondsman under federal law from arrest and prosecution for violation of the law of Ohio in apprehending bail jumpers. The quoted language from *Taylor v. Taintor* appears to be simply an effort to state the common law powers of bondsmen, as found in *Blackstone*, Chapter 8, and several other sources. We find nothing in *Taylor, or* in Chapter 8 of *Blackstone*, that would authorize the broad power of a bondsman at common law to "break the law," as claimed by Lund. Lund's entire federal claim is based on a misunderstanding of the Supreme Court's opinion in *Taylor v. Taintor*. The bondsman may be authorized under the law of the state where a bond is made to retrieve bail jumpers, but he must abide by he law of the state he enters to pursue his fugitive. Federal constitutional law does not preempt state law or immunize bondsmen from violations of local law. Plaintiffs' argument that "the bondsman is basically permitted to break the [local] law to rearrest his fugitive" is simply wrong.

Because Lund has failed to state a federal claim under the Extradition Clause or any other provision of the federal Constitution, his action under § 1983 must be dismissed. In addition, we find no error in the District Court's summary disposition of plaintiff's numerous, repetitive state law claims of false imprisonment, malicious prosecution, abuse of process, tortious interference with a contractual relationship, intentional infliction of emotional distress, battery, and negligent infliction of emotional distress.

Accordingly, the judgment of the District Court is AFFIRMED.

in the home. The District Court granted summary judgment for the defendants on all of the federal and state claims. It held that the Seneca County law enforcement officers were protected by qualified immunity and that there was probable cause for the arrest of Larry Lund.

Plaintiffs' main argument on appeal is that language found in *Taylor v. Taintor,* 83 U.S. 366 (1872), at page 371, set out in the footnote below,[1] provides them with a "clearly established" federal constitutional right under the Extradition Clause, Article IV, § 2, to enter the home of another and

---

[1] The language in question with footnotes is as follows: "When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge; and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another State; may arrest him on the Sabbath; and, if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of new process. None is needed. It is likened to the rearrest by the sheriff of an escaping prisoner.* In 6 Modern,** it is said: "The bail have their principal on a string, and may pull the string whenever they please, and render him in their discharge." The rights of the bail lin civil and criminal cases are the same.*** They may doubtless permit him to go beyond the limits of the State within which he is to answer, but it is unwise and imprudent to do so; and if any evil ensue, they must bear the burden of the consequences, and cannot cast them upon the obligee.****"

"*8 Blackstone's Commentaries, 290; *Nicolls v. Ingersoll*, 7 Johnson, 152; *Ruggles v. Corry*, 3 Connecticut 84, 421; *Respublica v. Gaoler*, 2 Yeates, 263; 8 Pickering, 140; *Boardman & Hunt v. Fowler*, 1 Johnson's Cases, 418; *Commonwealth v. Riddle*, 1 Sergeant & Rawle, 811; *Wheeler v. Wheeler*, 7 Massachusetts , 169."

"**Page 281, Case 889, Anon."

"***\*Harp v. Osgood*, 2 Hill 218."

"****\*Devine v. The State*, 5 Sneed, 625; *United States v. Von Fossen*, 1 Dillon, 410; *Respublica v. Gaoler*, 2 Yeates 265, cited *supra*."

For a brief history of bail and the authority of bondsmen and bounty hunters, *see* Drimmer, *When Man Hunts Man: The Rights and Duties of Bounty Hunters in the American Criminal Justice System*, 33 HOUSTON L. REV. 751 (1966).

arrest a bail jumper without a warrant or other process. Based upon this quoted language from *Taylor v. Taintor*, the essence of Lund's constitutional argument on appeal, as found on page 18 of his appellate brief, is as follows:

> [A] bondsman can go anywhere in the United States and arrest his fugitive at any time. It matters not if he leaves kids unattended, or if he forces his way into a third party's home or if he forcefully seizes his fugitive. The bondsman is basically permitted to break the law to re-arrest his fugitive.

Lund asserts that the defendant law enforcement officers "transgressed a clearly established right" under the Extradition Clause, as enunciated in *Taylor v. Taintor,* when they effected Lund's arrest for forcefully entering the house of a third party and taking Gish away while leaving the children unattended.

*Taylor v. Taintor* does not support plaintiffs' federal claim. In that 1872 case, sureties made an $8000 cash bond for McGuire in Connecticut in September 1866 after he was charged with a felony. While awaiting trial in Connecticut, McGuire returned to his home in New York. Unknown to the bondsmen in Connecticut, McGuire was wanted in Maine for another felony. Upon request from the Governor of Maine later in 1866, the Governor of New York extradited him to Maine where he was convicted a year later and imprisoned for fifteen years. When McGuire failed to appear for trial in Connecticut in October 1866, the cash bond was forfeited. The Connecticut bondsmen sought relief from the forfeiture on grounds that they were not at fault in failing to secure McGuire's appearance but rather that his nonappearance was the result of his extradition to Maine — an intervening "act of law" under the Extradition Clause .[2]  The Supreme Court, by

---

[2]The Extradition Clause, Article IV, § 2 provides:  "A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the

a vote of 4 to 3 (2 Justices recused themselves) held that the sureties were at fault and were not protected by the Extradition Clause. The sureties' "supineness and neglect" in failing to keep up with McGuire and to inform the New York authorities of the pending Connecticut case caused McGuire's nonappearance. *Id.* at 373. Justice Field in dissent, writing for himself and Justices Clifford and Miller, argued that Extradition Clause of Article IV, Section 2, was complied with by the States of New York and Maine. Since McGuire's failure to appear in Connecticut was the result of the enforcement of the Extradition Clause, the bail money should be returned to the sureties in their view. *Id.* at 376.[3]

When one reads *Taylor v. Taintor* in full, it is clear upon reflection that nothing the majority or minority said was intended to mean that the Extradition Clause or any other provision of the Constitution authorizes bondsmen to violate the law of a state or provisions of the federal Constitution in an effort to apprehend a bail jumper. The language from the majority opinion, quoted in footnote 1 above, and relied upon by Lund, is not meant as an interpretation of federal constitutional law. It does not create for bondsmen "a clearly

---

executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

[3]Justice Field summarized his view as follows:  "I am unable to concur in the judgment rendered by the majority of the court in this case. I agree with them that sureties on a recognizance can only be discharged from liability by the performance of the condition stipulated, unless that become impossible by the act of God, or of the law, or of the obligee. But I differ from them in the application of their term *act of the law*.  If I understand correctly their opinion they limit the term to a proceeding authorized by a law enacted by the State where the recognizance was executed.  I am of opinion that the tem will also embrace a proceeding authorized by any law of the United States. A proceeding sanctioned by such law, which renders the performance of the condition of the recognizance impossible, ought, in my judgment, upon plain principles of justice and according to the authorities, to release the sureties."  *Id.* at 376.