# United States Court of Appeals
## For the First Circuit

No. 16-2412

RICARDO RODRÍGUEZ-TIRADO; ANGELICA TIRADO-VELÁZQUEZ,

Plaintiffs, Appellants,

v.

SPEEDY BAIL BONDS,

Defendant, Appellee,

AMERICAN RELIABLE BAIL BONDS, LLC; MICHELLE ROMÁN; DANNY DOMÍNGUEZ; ELIOENAI FERNANDEZ,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Bruce J. McGiverin, U.S. Magistrate Judge]

Before

Howard, Chief Judge,
Torruella and Boudin, Circuit Judges.

Guillermo Ramos Luiña on brief for appellants.
Jorge Martínez-Luciano, with whom ML & RE Law Office, Heriberto Güivas-Lorenzo, and Güivas-Lorenzo Law Office were on brief, for appellee.

May 30, 2018

**BOUDIN, <u>Circuit Judge</u>**.  The present case concerns cross claims arising out of an attempt by a bail bondsman to seize a bailed man who had failed to appear for a court hearing.  In 2010, Ricardo Rodríguez-Tirado ("Rodríguez") was charged with a criminal offense in New Jersey and was later released on bail to await further proceedings.

Instead, Rodríguez left New Jersey to return to his home in Puerto Rico, itself a violation of the bail agreement.  When Rodríguez thereafter missed a court date in New Jersey, the bail bond, posted by American Reliable Insurance ("Reliable"), was declared forfeited by the New Jersey Superior Court.  Reliable was an Arizona-based company acting as a corporate surety in New Jersey in concert with its local agent, Speedy Bail Bonds ("Speedy").  Following the bond forfeiture, Speedy undertook to retrieve Rodríguez and deliver him to New Jersey, aiming to have the forfeited bail money returned to Reliable.  This, it appears, is a minuet well known to the world of bail bonds.

Agents acting for Speedy traveled to Puerto Rico where, aided by an off-duty policeman, they confronted Rodríguez, seized him, and bundled him into a car.  Speedy later claimed that its agents calmly explained to Rodríguez that they were there to take him back to New Jersey because he had jumped bail, that no weapons were used to menace him, and that the agents escorted Rodríguez to their car, using handcuffs only as a precaution.  Rodríguez claims

that he was violently seized at gunpoint without any explanation, shackled, and thrown into the car, and that he had no knowledge of the missed court date.

This episode was witnessed by Rodríguez's mother, Angélica Tirado-Velázquez ("Tirado"). She telephoned a local attorney, who learned that no outstanding warrant or extradition request had been lodged with Puerto Rico authorities against Rodríguez. On behalf of Tirado, the attorney filed a complaint with the police.

A warrant was issued for the arrest of the bounty hunters, who were staying in a hotel next to the airport with their captive, awaiting a flight to New Jersey. The bounty hunters surrendered to the authorities, Rodríguez was released, and the bounty hunters were charged with kidnapping and gun offenses-- charges ultimately dropped.

Rodríguez filed suit in federal court in Puerto Rico against Speedy and various other defendants, seeking damages for his seizure and detention by the defendants; his mother as co-plaintiff claimed mental anguish from having witnessed her son's "kidnapping" and "violent removal" from the house. The plaintiffs voluntarily dismissed all defendants save Speedy, which counterclaimed for breach of the bail agreement.

Following a four-day trial, the jury returned a verdict in favor of Speedy, dismissing the tort claims by Rodríguez and

his mother with prejudice and awarding Speedy $1,500 on its counterclaim for damages caused by Rodríguez's breach of his obligations under his bail agreement. A central question at the trial, resolved in Speedy's favor in the jury instructions, was the right of a bounty hunter to pursue, seize, and return to the bailing jurisdiction a bail-jumper like Rodríguez. Much of the argument at trial, renewed on this appeal, centered around an oft-cited Supreme Court case, Taylor v. Taintor, 83 U.S. 366 (1873), which ruled that at common law the authority of the bounty hunter to pursue, seize, and return the bail jumper was well established. Whether this was holding or dicta was disputed.

The waters were further muddied because the Supreme Court has occasionally cited and never repudiated Taylor, but a number of states have, by statute or otherwise, narrowed the rights of the bailer to pursue and seize a bail jumper. The parties in this court have not cited anything that cleanly resolves the question of what Puerto Rico judges would say about Taylor.

This appeal followed the district court judgment and, not surprisingly, much of the parties' briefing renews the debate about the current status of Taylor. Both sides seem to assume that, if only the Supreme Court would make clear its current view of the rights of bondsmen and their agents to pursue bail-jumpers into other jurisdictions, the matter would be settled. We take a different view.

What the parties have overlooked is that the Supreme Court decided Taylor during the regime of Swift v. Tyson, 41 U.S. 1 (1842), in which courts conceived of the common law as a "brooding omnipresence in the sky," S. Pac. Co. v. Jensen, 244 U.S. 205, 222 (1917) (Holmes, J., dissenting), to which federal and state courts alike accorded respect unless altered by statute or otherwise in a particular jurisdiction; and the Supreme Court was itself the final arbiter of disputes about the content of the common law.

This attitude persisted into the twentieth century until it was definitively and dramatically discarded by Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). See Henry Friendly, In Praise of *Erie*: And of the New Federal Common Law, 39 N.Y.U. L. Rev. 383 (1964). Absent some federal interest not claimed by any party or apparent to us, what the Puerto Rico courts or legislators decide should be the law governing conduct within its own jurisdiction will control regardless of what view of bailer authority is today taken by the Supreme Court. See Restatement (Second) of Conflict of Laws § 145(1).

The question of Puerto Rico law and out-of-state bounty hunters has not been briefed and we therefore remand the case to the district court to consider that issue in the first instance, resolving as far as feasible now the first of two issues on appeal.

The second issue is whether the district court erred by failing to decide for itself whether certain damages claimed by Speedy were foreseeable under the terms of the bail agreement. The bail agreement stipulated that Rodríguez would be "responsible for any costs incurred by Speedy Bail Bonds for [his] re-arrest," and Rodríguez argues that Speedy never presented the jury with concrete evidence as to the damages it suffered; the suggestion is that the jury's modest damages award was based on an estimate of the costs that the company incurred bailing out its bounty hunters and defending them in the initial court proceedings in Puerto Rico. Because those costs flowed from the intervening actions of a third party when his mother called the police, Rodríguez claims they were not foreseeable under the contract.

While the costs incurred by Speedy for bailing its agents out of jail might arguably not be foreseeable contractual damages--Tirado having broken the chain of causation--the jury did not award $1,500 for such costs. The Fugitive Fee Contract, incorporated into the Bail Agreement and signed by Rodríguez the day he was released on the bond, specified that Rodríguez was to pay "the greater of $1,500 or 10 percent of the amount of the Bond" to Speedy if he was deemed to be a fugitive, meaning if he failed to appear for a court hearing or had his bail forfeited. If apprehended or located outside of New Jersey as a fugitive, however, the contract stated that Rodríguez was to pay "the greater

of $1,500 or 20 percent of the amount of the Bond." This document was shown to the jury, and the damages award was almost certainly pegged directly to this fugitive fees clause, operating as a liquidated damages provision.

The damages award on the counterclaim is <u>affirmed</u>, and the case is <u>remanded</u> to the district court for further proceedings on the question of whether the jury instructions as to the tort claims accurately reflected Puerto Rico law. Each side shall bear its own costs.

**<u>It is so ordered.</u>**