135 So.2d 777 (1961)
PUBLIC SERVICE MUTUAL INSURANCE COMPANY, a corporation, Appellant,
v.
STATE of Florida, Appellee.
Nos. C-420 to C-427.
District Court of Appeal of Florida. First District.
December 21, 1961.
Harry H. Martin, Jacksonville, for appellants.
Richard W. Ervin, Atty. Gen., and Reeves Bowen, Asst. Atty. Gen., for appellees.
STURGIS, Judge.
The appellant surety on eight bail bonds made by one Harley Jiles Jordan, as principal, to secure his appearance in the Criminal *778 Court of Record of Duval County, seeks reversal of eight money judgments entered against it by the Circuit Court of Duval County, Florida, consequent upon the forfeiture of the bonds for failure of the principal to appear in said Criminal Court as provided thereby. The eight appeals involve the same facts and points of law and are consolidated here for disposition.
On December 22, 1959, the Criminal Court of Record ordered the several bonds forfeited because of the failure of Jordan, the principal, to appear and make answer to several criminal charges against him pending therein, and the judge of said court made a certificate to that effect. Proceedings for enforcement of the forfeitures were had in the Circuit Court of Duval County and on July 22, 1960, the subject judgments were entered in favor of the State of Florida, for the use and benefit of Duval County.
On August 16, 1960, the appellant surety company filed in each case an application for remission of said forfeiture, from which it appears that Jordan was arrested and taken into custody in the state of South Carolina on May 2, 1960, by a federal officer and charged with commission of a federal crime, of which he was convicted on May 26, 1960, by the United States District Court of the Eastern District of South Carolina and thereupon sentenced to imprisonment for a term of five years in a federal penitentiary; that he was committed to the United States Penitentiary at Lewisburg, Pennsylvania, and was there under confinement on July 22, 1960, the date on which the subject judgments were entered. Appellant bases its claim for remission of the forfeiture on the premise that said circumstances and the continued confinement of the principal in said penitentiary prevented it from surrendering him to the state court. The circuit court denied the applications.
We hold that the imprisonment and detention of the principal under the circumstances related does not operate to relieve the surety from its obligation on the bail bonds in suit.
Appellant contends that its rights are governed by Section 903.29(1), Florida Statutes 1959, F.S.A., which provides:
"After the entry of judgment on the undertaking, the court entering the judgment may for a reasonable cause shown within thirty days set aside the judgment in whole or in part upon such terms as are just; and shall set aside the same if it shall appear that there was no breach of the undertaking, provided, however, if the bail bondsman, or his surety company shall apprehend the defendant, whose failure to appear or to fulfill his bond contract has resulted in forfeiture of undertaking, and cause him to be returned to the jurisdiction and to the custody of the trial court within a period of thirty days from the date of such judgment, said judgment shall be vacated and payment made by bondsman or surety shall be refunded, except where the trial court shall find that the failure to sooner apprehend and return the defendant has defeated the ends of justice and thwarted the successful prosecution of the defendant."
and that, because of the acts of the federal authorities, it was prevented from surrendering Jordan to the Florida court within the 10-day period specified by F.S. Sec. 903.27, F.S.A. This position is untenable, as we will demonstrate.
Appellee concedes that had the State of Florida, the obligee under said bonds, prevented Jordan's appearance in the Criminal Court of Record of Duval County, appellant would be entitled to relief under the rule in Stirling v. State, 85 Fla. 78, 95 So. 300. Appellee contends, however, and we agree, that where the principal on the bail bond is arrested and convicted in a foreign jurisdiction for another and different offense and is thereby prevented from appearing in the Florida court according to the condition of his bond, the great weight of *779 authority is to the effect that such circumstance does not excuse the surety on the bond from its obligation to produce the principal.
Arrest and detention of the principal in another jurisdiction for a second and different offense is ordinarily held not to operate to excuse his surety on a bail bond, not only where he is held in a second jurisdiction for an offense committed after release on the bail, but also where such offense was committed prior thereto. It is of no consequence whether the principal left the jurisdiction with or without the permission of the surety to whose custody he had been entrusted, or that the obligee (The State of Florida in these cases) does not demand the surrender of the principal on the theory that it had prior jurisdiction. This rule rests on the principle that performance of the contract was not prevented by act of the obligee-State or the law; on the contrary, that the removal of the principal to another jurisdiction and his falling into the custody of the law of that jurisdiction are the products of his own voluntary act, and that the surety is at fault for having permitted him to go into such other jurisdiction instead of keeping him under its control. It is held on sound logic that if the rule were otherwise, a person accused of a serious offense in one jurisdiction and released under heavy bail could secure the discharge of his bail by committing a minor offense in another jurisdiction for which he would be arrested and detained. 6 Am.Jur. 139, Bail and Recognizance, Sec. 185.
In the leading case of Taylor v. Taintor, 16 Wall. 366, 83 U.S. 287, 21 L.Ed. 287, the principal left the state where his bond was returnable and was incarcerated in another state for violation of its laws. In the case on review, the factual distinction is that Jordan was incarcerated in South Carolina under the laws of the United States. In Taylor v. Taintor the decision against the sureties turned, however, on the proposition that it was not an act of the law which made it impossible for the principal to appear in the state where provided under the bond, but rather, the act of the principal in leaving the state where the bond was returnable and exposing himself to the control and action of the state in which he was incarcerated, and it was held that the sureties must accept the consequences of having allowed the principal to so remove himself. These precepts apply to the cases on review. Appellant's inability to surrender Jordan was not due to an act of the law but to Jordan's act in exposing himself to the control of the federal authorities in South Carolina and thereby being prevented from appearing in the Criminal Court of Record in Duval County. As in the cited case, Jordan's surety (appellant) must accept the consequences of its failure to keep him within the limits of this state and produce him under the bond. We quote with approval the following excerpts from the cited case:
"It is the settled law of this class of cases that the bail will be exonerated where the performance of the condition is rendered impossible by the act of God, the act of the obligee, or the act of the law. Where the principal dies before the day of performance, the case is within the first category. Where the court before which the principal is bound to appear is abolished without qualification, the case is within the second. If the principal is arrested in the State where the obligation is given and sent out of the State by the governor, upon the requisition of the governor of another State, it is within the third. In such cases the governor acts in his official character, and represents the sovereignty of the State in giving efficacy to the Constitution of the United States and the law of Congress. If he refuse, there is no means of compulsion. But if he act, and the fugitive is surrendered, the State whence he is removed can no longer require his appearance before her tribunals, and all obligations which she has taken to secure that result *780 thereupon at once, ipso facto, lose their binding effect. * * *
"It is equally well settled that if the impossibility be created by the obligor or a stranger, the rights of the obligee will be in nowise affected. And there is `a distinction between the act of the law proper and the act of the obligor, which exposes him to the control and action of the law.' While the former exonerates, the latter gives no immunity. It is the willing act of the obligor which creates the obstacle, and the legal effect is the same as of any other act of his, which puts performance out of his power. * * *" (Emphasis supplied.)
* * * * * *
"The law which renders the performance impossible, and therefore excuses failure, must be a law operative in the State where the obligation was assumed, and obligatory in its effect upon her authorities. If, after the instrument is executed, the principal is imprisoned in another State for the violation of a criminal law of that State, it will not avail to protect him or his sureties. Such is now the settled rule.
"* * * In 6 Modern it is said: `The bail have their principal on a string, and may pull the string whenever they please, and render him in their discharge.' The rights of the bail in civil and criminal cases are the same. They may doubtless permit him to go beyond the limits of the State within which he is to answer, but it is unwise and imprudent to do so; and if any evil ensue, they must bear the burden of the consequences, and cannot cast them upon the obligee.
"In the case of Devine v. State[1], the court, speaking of the principal, say, `The sureties had the control of his person; they were bound at their peril to keep him within their jurisdiction, and to have his person ready to surrender when demanded. * * * In the case before us, the failure of the sureties to surrender their principal, was, in the view of the law, the result of their own negligence or connivance, in suffering their principal to go beyond the jurisdiction of the court and from under their control.' The other authorities cited are to the same effect."
United States v. Van Fossen, 1 Dillon 406, 28 Fed.Cas. pp. 357, 358, No. 16,607, was followed in Taylor v. Taintor, supra. The principal made bail to answer a criminal charge in the United States District Court for the District of Kansas and his bond was forfeited for failure to appear. In an action to recover on the bond, the sureties pleaded that after it was posted the principal went beyond the jurisdiction of said court into the state of Missouri and there committed a crime against its laws, for which he was convicted and sentenced to imprisonment in the Missouri penitentiary where he was confined when the bond was forfeited, thus preventing the sureties from producing him to answer the federal charge in Kansas. In holding the sureties liable on the bond, the court said:
"The United States and the state of Missouri are wholly distinct parties, and the action of the state authorities cannot be imputed to the government of the United States as an obstruction or interruption by it to the performance of the condition of the recognizance. * * *
"* * * The facts pleaded by the sureties show that their principal was prevented from appearing, not by an act of the law, properly viewed, but by reason of his own voluntary act, which rendered him amenable to the criminal laws of another jurisdiction. There would be no one so bold as to claim that the principal should be allowed *781 to set up, as a defence to this recognizance, that he had thus been prevented from appearing; and the sureties are so far bound up with their principal, that they must show that he had a sufficient excuse for not keeping the condition of the bond.
"The case stands thus: The United States had the actual custody of the principal, to answer an indictment which had already been preferred against him. Upon the recognizance being taken, the principal was delivered into what Blackstone calls the `friendly custody' of his sureties, instead of being committed to prison. 4 B1. Comm. 301. They thenceforth became invested with full authority over his person. They are his jailors. They may take him at any time or place; in the state, or beyond it. They are aptly said to have the principal always upon the string, and they may pull it when they please, to surrender him in their own discharge. 6 Mod. 231. If they do not exercise their power to prevent his going beyond the jurisdiction, and he does so, with or without their consent, and commits an offence, and is sentenced to prison for it, this cannot be accepted by the state in whose tribunals the recognizance was taken, as a defence thereto. * * *
* * * * * *
"In the exercise of their respective systems of criminal jurisprudence, neither the state nor the United States could admit the sufficiency of such a defence as is here pleaded. In this case, Dunn was indicted for an offence against the general government, of a highly penal nature. It is punished much more severely than the offence for which he was subsequently convicted in Missouri; and if the defence here insisted on were to prevail, a defendant guilty of a grave offence, would be allowed the opportunity of evading or postponing punishment therefor, by giving bail (who incur no liability) and then committing, against another jurisdiction, a lesser offence, and submitting himself to its actual custody. Neither a state nor a federal court can be expected to recognize as law, a principle which is attended with such consequences, and which not only defeats justice, but has a tendency to encourage the commission of crime. * * *"
After that opinion was rendered, the sureties filed an amended answer alleging that the Missouri crime for which Dunn was convicted was committed prior to the giving of the bail bond to answer the United States District Court in Kansas, and further alleging that subsequent to the forfeiture Dunn died while an inmate of the Missouri penitentiary. In sustaining a demurrer to the amended answer, the court held that the date on which the offense in Missouri was committed did not change the legal obligations of the sureties and that the death of the principal, after default and forfeiture, does not exonerate his sureties.
In Ward v. State ex rel. Carman, 200 Okla. 51, 196 P.2d 856, 4 A.L.R.2d 436, the Oklahoma Supreme Court held that where an accused is released on bond and thereafter arrested by the authorities of another jurisdiction for a crime committed in that jurisdiction subsequent to his release on bond, and cannot appear for trial in the court where he made bond, such failure is the result of his own voluntary act in committing the second offense and not an act of law preventing his appearance for trial, citing Metcalf v. State, 57 Okla. 64, 156 P. 305, L.R.A. 1916E, 595; Kirk v. State, 144 Okla. 242, 291 P. 90; Ricks v. State, 189 Okla. 598, 119 P.2d 51. While in Ward v. State the Oklahoma court emphasized the fact that the nonappearance of the principal in the state court was occasioned by his detention for a crime committed against another jurisdiction after his release on the Oklahoma bail bond, thus inferring that such was the fact which *782 prevented the sureties from being exonerated, it will be observed that under the rule in Taylor v. Taintor, United States v. Van Fossen, and United States v. Marrin, supra, it is immaterial whether the detention preventing appearance was for a crime committed against another jurisdiction before or after the bail bond was given; the rationale of these cases being that the sureties were liable because it was the act of the principal, by which the sureties were bound, rather than the act of the law of the foreign jurisdiction, that made it impossible for him to appear in accordance with the bail bond.
In view of the above, it is of no moment whether the federal crime for which the principal here (Jordan) was arrested and convicted in South Carolina was committed before or after his release on the bonds in question. Moreover, Jordan was not arrested in South Carolina until May 1960, which was more than four months after the bonds were forfeited in December 1959. The reasonable inference is that the arrest was for a crime committed after the bonds were executed and there is no showing to the contrary, hence this case meets whatever interpretation is given to the Oklahoma rule in Ward v. State, supra.
An annotation found at pages 449 and 450 of 4 A.L.R.2d reviews all cases relied upon by appellant except Stirling v. State, 85 Fla. 78, 95 So. 300. The Stirling case is not in point because it involves a detention of the principal at a place in this state other than the place herein where the bond was returnable. A casual examination of the cases in the annotation produces the impression that a substantial line of authority supports appellant's position herein. However, a careful analysis discloses that such is not so. As we find no controlling Florida precedent on the subject of this appeal, it is expedient to discuss the cases reviewed by the annotation and which, as we construe them, do not contravene the majority rule to which we adhere.
The annotator, in discussing In Re James, 8 Cir., 18 F. 853, 856, acknowledges that the pertinent comments in this case are dictum. James, who was admitted to bail in a Missouri state court, was arrested in that state by a United States Marshal on a charge of having committed a federal offense in Alabama. The question before the federal court in Missouri was whether it should enter an order transferring James to Alabama. It refused to do so, holding that the state of Missouri had the prior right to try him for violation of the state law for which he had given the bail bond to answer. The court expressed the view, however, by way of dictum, that aside from statute and where the bondsmen are not charged or chargeable with neglect, where a court of competent jurisdiction wrests the prisoner from them this amounts to an act of law and can be set up as a defense to a suit on the bond. It is seen that the court was speaking of the particular situation in that case wherein the federal official had wrested James from his sureties in the state of Missouri, rather than one where, as in the case on review, the prisoner (Jordan) departed from Florida into another jurisdiction through the neglect of his sureties to keep him in Florida, and was there arrested, convicted and imprisoned. In the James case the following pertinent comment appears:
"* * * It has been decided, both in federal and state courts, that when the bondsmen permit the accused to go at large, and he passes beyond the jurisdiction of the state and commits an offense for which he is arrested and detained, this does not constitute a defense to a suit on a bail bond. * *"
The case of Belding v. State, 25 Ark. 315, 99 Am.Dec. 214, 4 Am.Rep. 26, is of no comfort to appellant. There the principal made bail to answer an Arkansas indictment and was unable to appear because of his arrest and detention by the military authorities of the Department of Arkansas, followed by imprisonment at Little Rock, Arkansas, and later at Vicksburg, *783 Mississippi. The surety was relieved of liability because the arrest and imprisonment of the principal placed him beyond the reach of the sureties' power at the time of the forfeiture. But it will be noted that as in the Florida case of Stirling v. State, supra, the arrest in Belding was by an agency of the state of Arkansas, to whose court the bail bond was returnable. The decision, therefore, is not in conflict with the general rule whereby a surety is not relieved from liability if he permits his principal to go into another jurisdiction and there be arrested and detained. In the later Arkansas case of Adler v. State, 35 Ark. 517, 37 Am.Rep. 48, the following excerpts from Bishop on Criminal Procedure  supporting the rule to which we adhere  is quoted with approval:
"This is like any other contract (says Bishop), performance of which is excused by the act of the law or of God, or by the public enemy, yet by no difficulties of an inferior kind. Imprisonment of the principal for crime therefore will generally release the bail, the State having taken him out of their possession; and so will the surrendering of him to the authorities of another State as a fugitive from justice. But if they permit him to go into another jurisdiction, and there he is arrested and imprisoned, they will not be released, for they should have kept him within his and their own State. 1 Bish.Crim.Proc., Sec. 164(i)."
In State v. Emerson, 135 Kan. 563, 11 P.2d 702, relied on by appellant, Emerson gave bail bond to appear in the federal court. While at liberty thereon he was arrested on state charges and gave two bail bonds to appear in the state court to answer the charges. He later pleaded guilty to the federal charge and was sentenced to serve eighteen months in a federal penitentiary. Being detained thereunder, he did not appear in the state court and his bonds in that court were forfeited. His bondsmen moved to set aside the forfeitures, offering to deliver Emerson for trial in the state court immediately upon completion of his federal sentence. Upon appeal from an order denying the motions, the Supreme Court of Kansas held that the trial court abused its discretion and allowed ten days after Emerson's discharge from the federal penitentiary for him to appear or for his bondsmen to deliver him into the jurisdiction of the state court. This case is distinguishable from the case on review in that Emerson was detained by federal authority in a federal prison in the state where the state charges were pending, whereas Jordan was detained by federal authority in the state of South Carolina as the result of his having voluntarily departed from this state, in which he posted the bonds.
Commonwealth v. Webster, 1 Bush. 616, 64 Ky. 616, is cited in the above mentioned annotation but not in appellant's brief. The principal was taken into custody in Kentucky by order of the United States Provost Marshal and removed from the county where appearance was to have been made in a state court of Kentucky under a bail bond given therein, thereby depriving the surety of the power to surrender him. It was held that under these circumstances the surety was relieved of liability on the bond. It is seen that the arrest occurred in Kentucky, where the bail bond was given, rather than in another state to which the principal had removed himself, as in the case now on review.
Commonwealth v. Overby, 80 Ky. 208, 44 Am.Rep. 471, is discussed in the annotation but is not cited by appellant. The holding in Overby was summarized by the Court of Appeals of Kentucky in the later case of Fleenor v. Commonwealth, 308 Ky. 1, 213 S.W.2d 313, as follows:
"The appellants insist that a judgment of forfeiture cannot be had because the defendant Fleenor at the time he was to appear in the Whitley Circuit Court was in custody in Indiana on a charge pending against him in the United States District Court, and *784 Commonwealth v. Overby, 80 Ky. 208, 44 Am. Rep. 471, is cited. In that case John H. Overby, as principal, executed a bail bond for his appearance in the state court to answer the charge of passing a counterfeit United States Treasury note. On the day following the execution of the bail bond he was arrested by a Federal officer on the same charge and committed to the jail of Jefferson County. He was indicted, tried and convicted in the United States Court for the District of Kentucky, and sentenced to imprisonment for a term of five years. The surety was exonerated on the ground that there is an implied obligation on the part of the Commonwealth that the bail shall not be hindered by any authority within the limits of the state from surrendering his principal at any time before forfeiture. * * *"
It is apparent that the rule in these cases, as in Commonwealth v. Webster, supra, applies to a factual situation that is clearly distinguishable from the instant case, where the surety permitted the principal to remove himself to another jurisdiction  that of another state.
In Briggs v. Commonwealth, 185 Ky. 340, 214 S.W. 975, 8 A.L.R. 363, relied upon by appellant, the court held that the sureties were not freed from liability by the fact that at the time the bond was forfeited the principal had been inducted into the United States military service, it having been made to appear that the sureties were instrumental in securing induction of the principal into military service and that at the time the bond was forfeited he was stationed in a camp within 40 miles of the place of trial and could have obtained a furlough to attend the trial if he had wished to do so. There is no analogy in this situation to the cases on review.
The author of the annotation characterizes as "dictum" his discussion of State v. McAllister, 54 N.H. 156, which is not cited by appellant. The trial court there ordered that the forfeiture be remitted if the principal should appear at a term of the court subsequent to the term for appearance as conditioned by the bond. A second order to like effect was entered. The principal did not appear and after the bail was forfeited he was indicted for crime in the New Hampshire federal court, and upon conviction therein was sentenced to serve one year in jail. He later escaped from imprisonment thereon and fled to Canada where he remained. In dealing with a state statute, the New Hampshire Supreme Court said that the sureties were prevented from producing the principal "by one of the causes which the statute recognizes as a sufficient reason for not producing him." However, the sureties were held liable on the premise that when the bond was forfeited it was not an act of the law which prevented the appearance of the principal because the federal indictment was not returned until after the forfeiture. Thus the discussion regarding the statute  which for aught that appears specifically exonerated sureties on state bail bonds if the defendant was prevented from appearing by reason of confinement under federal charges  is pure dictum.
State v. Welborn, 205 N.C. 601, 172 S.E. 174, does not support appellant's position here because the principal, Welborn, was taken into custody by the federal authorities in the state of North Carolina, in which is located the state court where under the terms of the bond he was required to appear on a state charge. In the subsequent case of State v. Pelley, 222 N.C. 684, 24 S.E.2d 635, the North Carolina Supreme Court sustained forfeiture of a bail bond where the federal detention was the result of the commission by the principal of a crime in another state and distinguished the Welborn case.
In Jones v. State, 112 Tex.Cr.R. 171, 15 S.W.2d 622, 623, cited in the A.L.R.2d annotation but not in appellant's brief, the sureties on a bail bond were exonerated because prior to the time it was forfeited in the state court the principal on the bond *785 was delivered by a sheriff of that court into the custody of federal authorities, with the result that he was tried and convicted of a federal offense and sentenced to the federal penitentiary, where he was confined on the date of the forfeiture. The Texas court said:
"* * * it would appear that uncontrollable circumstances, brought about by the action of the sheriff of Hartley county in placing F.J. Jones in the custody of the federal authorities, prevented his appearance at court on the day his appearance bond was forfeited, and furnished sufficient cause for his nonappearance before final judgment was entered. * * *"
The remaining case discussed in said annotation is Bowling v. Commonwealth, 123 Va. 340, 96 S.E. 739, wherein the principal, after having been indicted in Virginia for a felony under state law, made bail bond and was thereafter arrested in Virginia by federal authorities and was indicted, tried and convicted by the federal court in Virginia for a federal crime committed after the bail bond was executed. He was sentenced to imprisonment in a West Virginia penitentiary for a term of three years, where he was detained on the date his bail bond required him to appear in the state court. It was held that the surety was exonerated because the Commonwealth Attorney for Virginia, the representative of the state, with full knowledge of the facts, voluntarily suffered the principal to be taken out of the control of his bondsman by federal authority. This situation has no bearing on the case at bar in which the clear inference is that the County Solicitor of Duval County, Florida  the representative of the State of Florida in the prosecutions against Jordan  had no knowledge of Jordan's arrest, detention or trial in the federal court in South Carolina, which occurred in May 1960, until he received a letter from the Chief Deputy United States Marshal in Charleston, South Carolina, addressed February 27, 1961.
The state contends, and we agree, that Section 903.29(1), Florida Statutes 1959, F.S.A., has no application to the situation with which we are confronted. The inability of the sureties to perform their obligation under the bond in suit is occasioned by their fault in permitting the principal, Jordan, to depart from this state to South Carolina where his willful act, rather than an act of the law, resulted in his failure to appear in the state court as required by the bond.
The judgments appealed are severally affirmed.
CARROLL, DONALD K., C.J., and WIGGINTON, J., concur.
NOTES
[1] Devine v. State, 5 Sneed 623, 625, 37 Tenn. 623.