SAWAYA, J.,
dissenting.
The issue in this case is whether the death of the defendant prior to expiration of the time limitation for remission of a forfeited bond under section 903.28(6), Florida Statutes, precludes the surety from obtaining remission under the statute when the surety made every reasonable effort to find and apprehend the defendant after he failed to appear. The majority interprets section 903.28(6) to mean that when a defendant dies, so too does the surety’s right to remission. I disagree. In my view, this interpretation is contrary to firmly established precedent that requires the statute to be strictly construed against the State and liberally construed in favor of the surety. I also believe that the death of a defendant is an act of God that renders the surety’s compliance with the requirements of section 903.28(6) and its bail bond contract impossible to perform. In this instance, the trial court should have the authority to grant remission under the statute when it finds that the surety used its best efforts to find and apprehend the defendant. § 903.28(6), Fla. Stat. (2005). I, therefore, conclude that the order granting remission should be affirmed.

Factual and Procedural Background

An evidentiary hearing was held on the surety’s motion for remission. When asked what the State’s position was, the State responded that the State was not the entity that prevented the return of the defendant. No argument was made by the State that its case against the defendant had been thwarted. This is why the trial court specifically stated in the order under review: “The main issue of disagreement is whether the Surety apprehended or substantially attempted to procure or cause the apprehension or surrender of the defendant.” The surety testified at the hearing that after Mr. Jones, the defendant, failed to appear in 2005, the surety had “investigators sitting at [Mr. Jones’s] house.” The surety further testified that he was working with detectives throughout the forfeiture period to locate Mr. Jones and that they were “doing all the efforts-we could possibly do to locate him.” There is no assertion whatsoever in this record by any party that the surety did not use its best efforts and do everything it could to locate and apprehend the defendant. The surety’s efforts did finally pay off because it did locate the defendant. The only problem was that it could not apprehend the defendant because the defendant was deceased.
The trial court found that the surety did everything it could to locate the defendant and that the defendant’s death was an act of God that made it impossible for the surety to physically produce Mr. Jones for further court proceedings. Based on sec *1222 tion 903.28(6), Florida Statutes, the court rendered an order remitting 50 percent of the forfeiture amount to the surety. The State challenges this order, arguing that the defendant’s death precludes remission under section 903.28(6). The majority agrees. I believe that the trial court got it right and the order of remission should be affirmed.
The majority opinion is based on the assertion that section 903.28(7), Florida Statutes, applies to prevent remission. That statute provides that “remission of a forfeiture may not be ordered for any reason other than as specified herein.” § 903.28(7), Fla. Stat. (2005). However, that statute does not apply to the instant case because there is no additional reason asserted for the remission other than that provided in section 903.28(6). Rather, the death of the defendant rendered it impossible for the surety to comply with the reasons provided in section 903.28(6) for remission. There is a difference between asserting additional reasons not included in section 903.28(6) and asserting that the statute cannot be complied with due to the death of the defendant.
The majority opinion is also founded on the assertion that the surety had an obligation under section 903.045, Florida Statutes, which was incorporated into its bail bond contract, to ensure that the defendant appeared in court and that the surety failed to comply with that obligation. Hence, the majority contends that the surety breached the bail bond contract and now must assume the risk of the defendant’s death and the loss of its bond. But we are not concerned with section 903.045 and its provisions as incorporated into the surety’s bail bond contract. When the defendant did not appear, section 903.26, Florida Statutes, and the bail bond contract provided that the surety must forfeit the bond and pay the bond amount to the court. Had the surety breached that statute and that part of the bail bond contract, it would not have been entitled to seek remission under section 903.28(6). See Hillsborough County v. Roche Sur. & Cas., Co., 805 So.2d 937 (Fla. 2d DCA 2001); County of Volusia v. Audet, 682 So.2d 687 (Fla. 5th DCA 1996). However, the surety fully complied by paying the bond amount. Therefore, it was entitled to seek remission under section 903.28(6) and the bail bond contract. See Roche; Audet. Hence, the question we must resolve is whether the death of the defendant made it impossible for the surety to comply with section 903.28(6) and the remission provisions of its bail bond contract.

Impossibility of Performance

The courts have consistently held that a bail bond is a three-party contract between the state, the accused, and the surety. Curlycan Bail Bonds, Inc. v. State, 933 So.2d 122, 123 (Fla. 3d DCA), review denied, 944 So.2d 986 (Fla.2006); Allegheny Cas. Co. v. State, 850 So.2d 669, 671 (Fla. 4th DCA 2003); Pinellas County v. Robertson, 490 So.2d 1041, 1042 (Fla. 2d DCA 1986); Accredited Sur. & Cas. Co. v. State ex rel. Hillsborough County, 383 So.2d 308 (Fla. 2d DCA 1980). The parameters of the terms and conditions of that contract are established by statute, which becomes part of the contract. State ex rel. Dade County v. All Fla. Sur. Co., 59 So.2d 849, 850 (Fla.1952) (“When bail is required the statute under which it is given becomes a part of the contract with the State.” (citing West v. State, 75 Fla. 342, 78 So. 275 (1918))). Therefore, under section 903.28(6), the bail bond contract in the instant case provides:
If the defendant surrenders or is apprehended within 2 years after forfeiture, the court, on motion at a hearing upon notice having been given to the clerk of the circuit court and the state attorney *1223 as required in subsection (8), shall direct remission of up to, but not more than, 50 percent of a forfeiture if the surety apprehended and surrendered the defendant or if the apprehension or surrender of the defendant was substantially procured or caused by the surety, or the surety has substantially attempted to procure or cause the apprehension or surrender of the defendant, and the delay has not thwarted the proper prosecution of the defendant. In addition, remission shall be granted when the surety did not substantially participate or attempt to participate in the apprehension or surrender of the defendant when the costs of returning the defendant to the jurisdiction of the court have been deducted from the remission and when the delay has not thwarted the proper prosecution of the defendant.
§ 903.28(6), Fla. Stat. (2005).
Hence, the statute and, therefore, the contract provides that the surety shall have the right to remission of 50 percent of the forfeiture if the defendant surrenders or is apprehended and the delay has not thwarted the proper prosecution of the defendant. As a contract, the bail bond is subject to basic contract principles, see A.D.W. v. State, 111 So.2d 1101 (Fla. 2d DCA 2001); Garcia v. State, 722 So.2d 905, 907 (Fla. 3d DCA 1998), and one of those principles dictates that impossibility of performance excuses a party from compliance with his or her obligations under the contract. “ ‘Impossibility of performance’ refers to those factual situations, too numerous to catalog, where the purposes, for which the contract was made, have, on one side, become impossible to perform.” Crown Ice Mach. Leasing Co. v. Sam Senter Farms, Inc., 174 So.2d 614, 617-18 (Fla. 2d DCA), cert. denied, 180 So.2d 656 (Fla.1965).
The courts generally agree an act of God that renders a contract impossible to perform excuses performance. In Pinellas County v. Robertson, 490 So.2d 1041 (Fla. 2d DCA 1986), the court explained:
The primary purposes of bail in a criminal case are to relieve the accused of imprisonment, to reheve the state of the burden of detaining the accused pending the trial, and to place the accused as much under the power of the court as if he were in custody of the proper officer. See Bankston v. State, 279 So.2d 326 (Fla. 2d DCA 1973). A bail bond is a three-party contract between the state, the accused, and the surety, whereby the surety guarantees appearance of the accused. Accredited Surety & Casualty Co. v. State ex rel. Hillsborough County, 383 So.2d 308 (Fla. 2d DCA 1980). The early case of Taylor v. fainter [Taintor ], 83 U.S. (16 Wall.) 366, 21 L.Ed. 287 (1873), announced three conditions under which bail could be exonerated: an act of God, an act of the obligee, or an act of the law.
Id. at 1042. In Allegheny, the Fourth District Court acknowledged that an act of God may render a contract impossible to perform and excuse performance. After stating the general rule that a bail bond is a three-party contract, the court observed, “In the instant case, Surety’s performance was not rendered impossible by an act of God or an act of the State. Surety’s ability to perform its obligation is due to its own fault in permitting the defendant to leave the State of Florida.” 850 So.2d at 672. Similarly in Curlycan, the court observed that an act of God may relieve the surety of its obligations under the bond, but distinguished an act of God from a defendant’s act of voluntarily fleeing the country without the surety’s intervention. 933 So.2d at 123.
*1224 The district courts have recognized, as did the trial court in the instant case, that death is an act of God. In Public Service Mutual Insurance Co. v. State, 135 So.2d 777 (Fla. 1st DCA 1961), the First District Court, like the court in Robertson, quoted with approval the United States Supreme Court decision in Taylor v. Taintor, 83 U.S. (16 Wall.) 366, 369-70, 21 L.Ed. 287 (1872) (footnotes omitted):
In the leading case of Taylor v. Taintor, 16 Wall. 366, 83 U.S. 287 [sic 366], 21 L.Ed. 287 [1872], the principal left the state where his bond was returnable and was incarcerated in another state for violation of its laws.... We quote with approval the following excerpts from the cited case:
It is the settled law of this class of cases that the bail will be exonerated where the performance of the condition is rendered impossible by the act of God, the act of the obligee, or the act of the law. Where the principal dies before the day of performance, the case is within the first category. Where the court before which the principal is bound to appear is abolished without qualification, the case is within the second. If the principal is arrested in the State where the obligation is given and sent out of the State by the governor, upon the requisition of the governor of another State, it is within the third.
135 So.2d at 779 (emphasis added). Courts in other states have also defined an act of God that excuses the surety of its obligations under the bail bond contract as including illness or death.[1]
*1225 Accordingly, the death of the defendant in the instant case is an act of God that rendered the surety’s performance under the bail bond contract impossible and thus entitled the surety to the requested remission. The majority cites State v. Sunshine State Bail Bonds, Inc., 967 So.2d 1084 (Fla. 2d DCA 2007), to support its conclusion that the doctrine of impossibility of performance is not applicable to bail bond contracts. However, that case is clearly distinguishable from the instant case. In Sunshine State, the surety sought remission of a bond forfeiture after discovering that the defendant had been shot and killed by law enforcement in another state. The Second District Court held that remission was not authorized under the statute on those facts. It cited Curlycan, Allegheny, and Robertson and stated that “the doctrine of impossibility of performance does not excuse [the surety] of its obligation to take precautionary action to prevent [the defendant] from leaving the jurisdiction, even though the actions of a third party prevented it from bringing [the defendant] back to the jurisdiction.” 967 So.2d at 1085. The Second District Court also noted that the surety never argued or presented evidence of its substantial attempts to procure or cause the defendant’s apprehension or surrender. Id. Unlike in Sunshine State, neither of the factors that the Second District Court found controlling is present in this case. Here, the defendant was found within the jurisdiction of the original court, and it is uncon-tradicted that the surety did everything it could to find the defendant.
The majority asserts that the delay caused by the defendant’s failure to appear thwarted the proper prosecution of the case. I disagree for reasons I will next explain.

Was the Proper Prosecution of the Case Thwarted?

Although the majority contends that remission is prohibited because the prosecution of the case was delayed and, therefore, thwarted, the State did not present that argument in the trial proceedings and that issue was not addressed by the trial court. This is why the trial court stated in its order: “The main issue of disagreement is whether the Surety apprehended or substantially attempted to procure or cause the apprehension or surrender of the defendant.” Since the issue whether the proper prosecution was thwarted was not raised in the trial court, I do not believe it is appropriate for this court to consider it. “For an issue to be preserved for appeal, ... it ‘must be presented to the lower court and the specific legal argument or ground to be argued on appeal must be part of that presentation if it is to be considered preserved.’ ” Archer v. State, 613 So.2d 446, 448 (Fla.1993) (quoting Tillman v. State, 471 So.2d 32, 35 (Fla.1985)); Wright v. State, 857 So.2d 861, 876 (Fla.2003) (“In order to preserve an issue for appellate review, the issue must be presented to the lower court and the specific legal argument or ground to be argued on review must be part of that presentation.”), cert. denied, 541 U.S. 961, 124 S.Ct. 1715, 158 L.Ed.2d 402 (2004); Tillman v. State, 471 So.2d 32, 35 (Fla.1985) (“In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved.”); *1226 see also Perez v. State, 919 So.2d 347, 359 (Fla.2005), cert. denied, 547 U.S. 1182, 126 S.Ct. 2359, 165 L.Ed.2d 285 (2006).
Moreover, that issue is not even addressed by the State in its brief other than in a single sentence, which states: “The defendant’s death is the ultimate thwarting of his prosecution.” Hence, not even the State contends that the delay thwarted the prosecution; rather, it argues the defendant’s death did. In Allied Bonding Agency, Inc. v. State, 358 So.2d 246 (Fla.4th DCA 1978), the court explained the issue of delay:
The record discloses no evidence the delay, caused by the defendant’s having failed to appear, thwarted the proper prosecution of the defendant. Of course, any disappearance of a defendant delays and thereby somewhat thwarts prosecution but we cannot say every disappearance thwarts prosecution or the statute, Section 903.28, Florida Statutes (1975), would be rendered meaningless. That provision of the statute which provides remission of the forfeited bond is meant to reward a diligent surety for the return of the principal. To disallow the remission would be to allow the diligent to go unrewarded and the lack of reward would surely lead to the thwarting of the prosecution because there would be no incentive to the surety-
Id. at 246-47 (citation omitted). Therefore, simply showing a delay is not enough. Here, there has been no showing, for example, that the State was unable to continue the prosecution of the defendant, had he lived, because the delay led to the loss of evidence; or that witnesses are no longer available to testify; or that the State’s ability to convince a jury beyond a reasonable doubt that the defendant committed the crime was otherwise impeded. If the State could have made such a showing, it surely would have. I believe that it did not because it could not. Simply declaring, as the majority does, that the delay in the instant case thwarted the proper prosecution, without a proper showing, necessarily vitiates the provisions of section 903.28(6), which “ ‘establishes a method that the bondsman can use to receive what is in effect a two-year extension of time to surrender the defendant if the bondsman pays the forfeiture prior to the entry of final judgment.’ ” County Bonding Agency v. State, 724 So.2d 131, 132 (Fla. 3d DCA 1998) (quoting Thomas W. Logue & William X. Candela, Florida Law of Bail Bond Estreature, Fla. B.J., Feb. 1989, at 44, 45 (footnote omitted)).. Although the surety located the defendant within the two-year period provided in section 903.28(6), the majority has, in essence, established as a matter of law that a delay of approximately fifteen months necessarily thwarts the proper prosecution of the case and automatically prohibits the surety’s statutory and contractual right to remission. I believe this is wrong.
I also believe the majority and the State misinterpret section 903.28(6), which requires a showing that “the delay has not thwarted the proper prosecution of the defendant.” (Emphasis added). The only logical interpretation of this provision is that there is still a criminal case for the State to prosecute. When the defendant died, his criminal case necessarily ended and, with it, the State’s prosecution of that case. In this instance the general rule— that when it becomes unnecessary to hold the surety to its guarantee to produce the defendant for trial, the bail bond is can-celled and the surety is relieved of its responsibilities under the contract — should apply. Bush v. Int’l Fid. Ins. Co., 834 So.2d 212, 214 (Fla. 4th DCA 2002) (“ ‘Ordinarily, a bail bond is cancelled when it no longer appears necessary to look to the surety to guarantee the appearance of the *1227 accused at subsequent court proceedings on the particular charges covered by the bond.’ ” (quoting Wiley v. State, 451 So.2d 916, 922 (Fla. 1st DCA 1984))), review denied, 847 So.2d 976 (Fla.2003). Here, when the defendant died, it was no longer necessary to look to the surety to produce the defendant. Had the death occurred prior to forfeiture, the bail bond contract would have been cancelled and the surety relieved of its responsibilities. Since the death occurred after forfeiture but before the time limits for remission had expired, I believe that the prosecution necessarily ended and the surety, which had attempted to perform its part of the contract by making every reasonable effort to find and apprehend the defendant, should be relieved of its responsibility to produce the defendant and should be entitled to the requested remission.
I also believe that the statute should be construed to allow remission under the facts of the instant case.

The Courts Must Liberally Construe the Statutes Governing Bail Bonds to Advance Their Purpose

“ ‘[A]pplieable statutory provisions must be given a reasonable and logical construction to accomplish the ends intended by the bail bond process.’ ” Bush, 834 So.2d at 214 (quoting Wiley, 451 So.2d at 922). The purpose of the statutes governing bail bonds is not to enrich the treasury of the State. Rather, as correctly recognized by this court, the policy behind the remission statute is as follows:
Parties’ rights and remedies regarding discharge of forfeited bonds and remission of part or all of the funds forfeited are currently governed by statutes and the courts are limited by their provisions. Courts say that such statutes should be construed liberally to favor sureties, since justice does not favor forfeiture. Liberal interpretation of such statutes in favor of sureties (1) saves the state the expense and burden of keeping an accused in jail pending trial; (2) promotes an accused’s liberty interest consistent with the presumption of innocence; and (3) provides incentives to sureties to offer bails bonds and to pursue those who flee the jurisdiction.
Bd. of County Comm’rs of Brevard v. Barber Bonding Agency, 860 So.2d 10, 11-12 (Fla. 5th DCA 2003) (citations omitted) (footnote omitted); see also County Bonding Agency v. State, 724 So.2d 131, 133 (Fla. 3d DCA 1998) (holding that the purpose of the remission statute is to create financial incentive for sureties to locate and apprehend fugitives). In other words, “[bjecause forfeiture is a harsh penalty, forfeiture statutes generally are ‘strictly construed in favor of the party against whom the penalty is sought to be imposed.’ ” Leon County v. Aloi-Williams Bonding Agency, 652 So.2d 464, 465-66 (Fla. 1st DCA 1995) (quoting Cabrera v. Dep’t of Natural Res., 478 So.2d 454, 456 (Fla. 3d DCA 1985)). Hence, the statute must be liberally construed in favor of the surety and strictly construed against the State.
Moreover, the statutory development of the law regarding liability of sureties on appearance bonds reveals a fairly consistent pattern of progression toward exonerating sureties and providing relief from forfeitures. For example, where the various subsections of section 903.28, Florida Statutes, particularly the prior versions of section 903.28(6), once provided that the court may grant remission, the statutes were revised in 1999 to provide that “the court shall direct remission.” Ch. 99-303, § 6, at 1920, Laws of Fla. (emphasis added). The change from discretionary to mandatory remission clearly indicates that the Legislature intended to further protect the surety and ensure that the surety ob *1228 tains the remission relief provided by the statute.
The majority’s interpretation of section 906.28(6) frustrates the very purpose for which the statute was enacted. For example, given the holding of the majority, sureties will hereafter be more reluctant to provide bonds in criminal cases where the health of the defendant is suspect, or the defendant is aged or infirm. But it seems to me that these are the people who should be given priority for bond for at least two reasons. First, jail administrators do not want the responsibility or the expense of having to care for a sick or infirm individual who is awaiting trial. Second, these people should be provided bond to allow them the opportunity to seek medical care from their own health care providers.
Here, the surety did what the remission statute encouraged it to do — pursue and locate the defendant. Unfortunately, the defendant was deceased when his whereabouts were discovered. Had he been alive, the surety would have been entitled to remission of the forfeiture bond based on the statutory percentage schedule. Based on a liberal interpretation of the statute, I do not think that the surety should be penalized simply because divine providence took the defendant away before the surety could.

Conclusion

The holding of the majority does nothing to further the goals of the bail bond statutes; it erroneously applies a strict interpretation of section 903.28(6) in favor of the State; and it fails to properly apply general contract principles to the bail bond contract. Accordingly, I respectfully dissent.

. In Tyler v. Capitol Indemnity Insurance Co., 206 Md. 129, 110 A.2d 528, 532 (1955), the court explained:
The obligation of the surety on bail bond may be discharged in any of three ways: by the act of God, act of the obligee, or act of the law. Taylor v. Taintor, supra, 16 Wall. 366, 21 L.Ed. 287; 8 C.J.S., Bail, § 76. If the principal dies, this act of God discharges the surety....
Similarly, in State v. Wynne, 356 Mo. 1095, 204 S.W.2d 927, 929 (1947), the court explained:
The courts generally hold that the sureties are discharged as a matter of law when the return of the defendant is prevented by (1) an act of God; (2) an act of the law; (3) an act of the obligee, the state where the criminal charge is pending. [Taylor v. Taintor, 16 Wall. 366, 21 L.Ed. 287; Id., 36 Conn. 242, 4 Am.Rep. 58; 8 C.J.S., Bail, § 76, p. 147.] An illustration of the first would be the death of the accused....
In Western Surety Co. v. People, 120 Colo. 357, 208 P.2d 1164, 1165 (1949), the court explained that "[a]n act of God rendering the performance of the condition in a recognizance or bond impossible always discharges the party bound from performing the obligation.” In Ramer v. State ex rel. Ward, 302 P.2d 139 (Okl.1956), a bond estreature case, the surety attempted to show that producing the accused was impossible due to the fact that the accused was insane. The court stated:
It is also urged that the principal on the bond was insane and that this is an act of God exonerating the surety. Generally, any illness the result of disease or a condition beyond the prevention or control of human agency is regarded as an act of God. But, to exonerate one from the consequences of a default of the condition of an appearance bond, the illness must be such as to render it reasonably impossible to produce the accused.
Id. at 141. The only reason the court held against the surety was because it concluded that the illness did not render it impossible for the surety to retrieve the accused and deliver him to the court. On the other hand, death does render such action an impossibility. In People v. Tubbs, 37 N.Y. 586, 588 (N.Y.1868), the court long ago stated:
In this State, it is settled that the act of God or of the law will excuse the nonperformance. As to contracts in general, see Wolfe v. Howes (20 N.Y. 197), in this court, affirming the decision of the Supreme Court (24 Barb. 174), and citing cases, text writers and reports from other States establishing the doctrine. The case of a replevin bond, Carpenter v. Stevens (12 *1225 Wend. 589). And as to recognizances in particular, see The People v. Manning (19 Wend. 297); The People v. Bartlett (3 Hill 570); The People v. Cook (30 Barb. 110). The inability of the principal to appear by reason of sickness is within these cases, the act of God, which excuses, and is a sufficient defense.