**CARROLL HUBBARD FOR GOVERNOR COMMITTEE et al., Plaintiffs,**

v.

**KENTUCKY REGISTRY OF ELECTION FINANCE et al., Defendants.**

No. C 79–0157–P(B).

United States District Court,
W. D. Kentucky,
Paducah Division.

Oct. 1, 1979.

Fred M. Goldberg, Louisville, Ky., Charles M. Chaney, Paducah, Ky., for plaintiffs.

Allen Prewitt, Jr., Frankfort, Ky., for Kentucky Registry of Election Finance.

Robert F. Stephens, Atty. Gen., Raymond M. Larson, Asst. Atty. Gen., Frankfort, Ky., Joe S. Freeland, Paducah, Ky., for L. M. Tipton Reed.

## MEMORANDUM CONTAINING FINDINGS OF FACT AND CONCLUSIONS OF LAW

BALLANTINE, District Judge.

Kentucky First District Congressman Carroll Hubbard was a candidate for the Democratic nomination for Governor in the Primary election held May 29, 1979. As a candidate he was subject to Kentucky's Corrupt Practices Act, Chapter 121, Kentucky Revised Statutes.

KRS 121.100, *et seq.*, establishes the Registry of Election Finance and delineates the duties and powers of the Registry. The Act also proscribes certain activities dealing with fund-raising by candidates and persons

and committees acting on behalf of candidates. The pertinent section of the Act which is at issue is KRS 121.150(4) which reads:

"No candidate, committee, or political action committee, nor anyone on their behalf, shall accept a cash contribution in excess of one hundred dollars ($100)."

On May 24, 1979, a special closed meeting of the Registry was held to consider a report from the Commissioner of the Kentucky State Police. At that meeting the Registry heard testimony of two Kentucky State Police Detectives concerning possible violations of the statute in Breathitt County, Kentucky. The Registry then referred the matter to the Commonwealth's Attorneys of Breathitt County and Graves County, the county of Mr. Hubbard's residence, for such further action as they deemed proper.

KRS 121.140 reads as follows:

"Any registered voter who believes a violation of this chapter has occurred may file a complaint under oath with the registry. Such complaint shall be kept confidential pending final determination of the merits of the complaint by the registry. The registry shall conduct a preliminary investigation of the merits of such complaint. If the registry determines that there are no reasonable grounds to believe that a violation has occurred, the complaint shall be dismissed. If the registry determines that there are such reasonable grounds, it shall give notice summoning the persons believed to have committed the violation to a hearing. The registry shall adopt such regulations to govern the conduct of a hearing. *The registry itself, if it has reasonable grounds to believe that a violation of this chapter has occurred shall initiate action and notify the attorney general or the appropriate commonwealth's attorney of the suspected violation.*" (Emphasis added.)

Mr. Hubbard, on June 15 by counsel, formally requested a hearing before the Registry. This request was denied and Mr. Hubbard, his campaign manager, Tilden Lanny Combs, Commonwealth's Attorney of Perry County, and his campaign committee, instituted this action seeking injunctive relief prohibiting a grand jury investigation of their fund-raising activities. The Court's jurisdiction was invoked under Title 42 U.S.C. Section 1983, Title 28 U.S.C. Section 1343, Title 28 U.S.C. Section 2201 and Title 28 U.S.C. Section 2202.

On August 29, 1979, the Court entered a temporary restraining order and, by agreement, the matter was assigned to September 26, 1979, for a hearing on the plaintiffs' motion for preliminary injunction.

A hearing was held on September 26 at Paducah, at which plaintiffs introduced testimony from Kyle Hubbard, Carroll Hubbard's brother, who had had an active role in the Congressman's campaign. Kyle Hubbard testified that he had first informally and later in writing requested a hearing before the Registry which, as was pointed out above, was denied.

The thrust of plaintiffs' argument is that the action of the Registry in referring the information it had obtained to the two Commonwealth's Attorneys infringed on their First and Fourteenth Amendment rights and should be enjoined. They argue that a Grand Jury investigation and a possible indictment would cause them immediate and irreparable harm.

We start with the threshold proposition that injunctive relief is an extraordinary remedy. We believe that the language from *Holiday Inns of America, Inc. v. B & B Corp.*, 409 F.2d 614 (3d Cir. 1969), is a cogent statement of the principle:

"We must protect that which is protectable, but, in so doing, we must limit the use of injunctive relief to situations where it is necessary to prevent immediate and irreparable injury. The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights, be those rights protected by statute or by the common law." 409 F.2d at 618.

**186**

■ As a matter of comity and federalism, federal courts should not ordinarily enjoin criminal prosecutions in state courts. As was said in *Douglas v. City of Jeannette*, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943):

"Notwithstanding the authority of the district court, as a federal court, to hear and dispose of the case, petitioners are entitled to the relief prayed only if they establish a cause of action in equity. Want of equity jurisdiction, while not going to the power of the court to decide the cause, (citations omitted) may nevertheless, in the discretion of the court, be objected to on its own motion. (Citations omitted.) Especially should it do so where its powers are invoked to interfere by injunction with threatened criminal prosecutions in a state court.

The power reserved to the states under the Constitution to provide for the determination of controversies in their courts may be restricted by federal district courts only in obedience to Congressional legislation in conformity to the Judiciary Article of the Constitution. Congress, by its legislation, has adopted the policy, with certain well defined statutory exceptions, of leaving generally to the state courts the trial of criminal cases arising under state laws, subject to review by this Court of any federal questions involved. Hence, courts of equity in the exercise of their discretionary powers should conform to this policy by refusing to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and imminent; and equitable remedies infringing this independence of the states—though they might otherwise be given—should be withheld if sought on slight or inconsequential grounds. (Citations omitted.)

It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions. No person is immune from prosecution in good faith for his alleged criminal acts. Its imminence, even though alleged to be in violation of constitutional guarantees, it not a ground for equity relief since the lawfulness or constitutionality of the statute or ordinance on which the prosecution is based may be determined as readily in the criminal case as in a suit for an injunction. (Citations omitted.) Where the threatened prosecution is by state officers for alleged violations of a state law, the state courts are the final arbiters of its meaning and application, subject only to review by this Court on federal grounds appropriately asserted. Hence the arrest by the federal courts of the processes of the criminal law within the states, and the determination of questions of criminal liability under state law by a federal court of equity, are to be supported only on a showing of danger of irreparable injury 'both great and immediate.' *Spielman Motor Sales Co. v. Dodge*, 295 U.S. 89, 95, 55 S.Ct. 678, 680, 79 L.Ed. 1322." 319 U.S. at 162–64, 63 S.Ct. at 880–81.

■ The testimony of Mr. Foster Ockerman, Mr. John Craig, and Mr. L. M. Tipton Reed was introduced as evidence by the plaintiffs. Mr. Ockerman is Chairman of the Registry and Mr. Reed is Commonwealth's Attorney for Graves County, Kentucky. Mr. Craig is Executive Director of the Registry. The Court has considered the depositions of these witnesses and finds that they are of no comfort to the plaintiffs. Plaintiffs argue that they should have been given a hearing before the Registry prior to its action in submitting· the information to Mr. Reed and Mr. Bryant, Commonwealth's Attorney for Breathitt County, where the incidents are alleged to have taken place. The statute which is quoted above—in the emphasized portion of it—affords no provision for a hearing before the Registry where the Registry acts on its own initiative. Whether this is a constitutional deprivation of any rights guaranteed plaintiffs, we do not decide. As was pointed out in *Douglas, supra*, even if the Act violates some constitutional right, it is not a ground for equitable relief.

In *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), the Court reviewed its holding in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Huffman v. Pursue Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). In *Juidice*, the Court said:

> "We now hold, however, that the principles of *Younger* and *Huffman* are not confined solely to the types of state actions which were sought to be enjoined in those cases. As we emphasized in *Huffman*, the ' "more vital consideration" ' behind the *Younger* doctrine of nonintervention lay not in the fact that the state criminal process was involved, but rather in
>
> > ' "the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." ' *Huffman*, supra [420 U.S.], at 601, 95 S.Ct., at 1206, quoting *Younger*, 401 U.S., at 44, 91 S.Ct., at 750.
>
> This is by no means a novel doctrine. In *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the watershed case which sanctioned the use of the Fourteenth Amendment to the United States Constitution as a sword as well as a shield against unconstitutional conduct of state officers, the Court said:
>
> > 'But the Federal court cannot, of course, interfere in a case where the proceedings were already pending in a state court. *Taylor v. Taintor*, 16 Wall. 366–370, 21 L.Ed. 287–290; *Harkrader v. Wadley*, 172 U.S. 148, 19 S.Ct. 119, 43 L.Ed. 399.' *Id.* [209 U.S.], at 162, 28 S.Ct., at 455." 430 U.S. at 334–35, 97 S.Ct. at 1217.

The federal courts have traditionally been reluctant to interfere with state courts trying state cases. The Court is persuaded that there is no more purely state action than the control by the state of election of its officers. The motion for preliminary injunction will be denied and this action will be dismissed with prejudice.

At the hearing in Paducah the plaintiff orally moved for the entry of an order staying enforcement of the order denying the preliminary injunction and dismissing the action and have tendered an order to the Court granting that stay. The Court has this date entered the order tendered by plaintiffs granting the stay, conditioned upon the continuation of the bond in the penal sum of $1,000.00 heretofore executed on August 28, 1979.

An appropriate Order has been entered this date.